BARRON COUNTY, Respondent, vs. BECKWITH, Appellant.

*February 2—April 26, 1910.*

*Clerks of circuit courts: Salary system: Fees in naturalization proceedings belong to county.*

1. Where, pursuant to ch. 411, Laws of 1901, a county board has fixed the salary of the clerk of the circuit court, he must account for and pay over all fees and other emoluments received by him in his official capacity.

2. The services performed by clerks of the circuit courts in proceedings to naturalize aliens under the federal statutes are per-

formed in their official capacity as such clerks, and the fees, whether fixed by act of Congress or by state law, are fees or emoluments of the office received by the clerks in their official capacity.

3. The fact that the clerks' fees in naturalization proceedings now prescribed by act of Congress differ from the fees which were fixed by the state law at the time of the enactment of ch. 411, Laws of 1901, is immaterial.

4. The act of Congress, authorizing and permitting the clerks to "retain one half of the fees" collected in naturalization proceedings, refers merely to the adjustment between such clerks and the Bureau of Immigration, and does not permit clerks who are on a salary basis to hold such fees as against the county.

APPEAL from a judgment of the circuit court for Barron county: A. J. VINJE, Circuit Judge. *Affirmed.*

This is an appeal by the defendant from a judgment against him for the sum of $165.50. The question involved is the right of the clerks of the circuit courts of this state, who, pursuant to the state statute, have been placed upon a salary basis of compensation, to retain fees allowed to them by the federal statutes for services in naturalization proceedings. It is alleged in the complaint that the defendant was clerk of the circuit court for *Barron* county; that the county board of said county, pursuant to ch. 411, Laws of 1901, which provides for a change from the fee to the salary system, adopted in 1901 the following resolution:

"WHEREAS, ch. 411, Laws of 1901, provides for a change from fees to salary system of officers therein named, therefore be it

"*Resolved,* in accordance therewith, that the method of compensating the clerk of circuit court for his services shall be a salary fixed by the county board, which shall be in lieu of all fees, *per diem,* and compensation for services rendered by him or his deputy, and that all such fees, *per diem,* and compensation for services rendered shall be turned over to the county treasurer according to law."

It is further alleged in the complaint that between January 1, 1907, and January 1, 1909, the defendant as clerk

collected as fees under the naturalization laws of the United States the sum of $165.50, which sum has been retained by him, and which he has failed to turn over to the treasurer of said county. The defendant answered admitting certain allegations of the complaint, and alleged that the fees received by him under the naturalization laws of the United States were not included in such fees as he was required to account for and turn over to the treasurer of the county under the resolution referred to, and denied any indebtedness to the county. The case was tried by the court. The court held that the defendant was liable to the county for the fees, and rendered judgment accordingly. From this judgment the defendant appealed.

For the appellant there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler.*

For the respondent the cause was submitted on the brief of *J. W. Soderberg.*

The following opinion was filed February 22, 1910:

KERWIN, J.   The defendant was clerk of the circuit court for *Barron* county upon a salary basis under the provisions of ch. 411, Laws of 1901, and a resolution of the county board passed in pursuance thereto by which he was to receive for his services as such clerk a fixed salary in lieu of all fees, *per diem,* and compensation for services rendered by him or his deputy. The resolution provided that all such fees, *per diem,* and compensation for services rendered should be turned over to the county treasurer according to law. The amount in dispute was collected by the defendant as fees under the naturalization laws of the United States and which he claims the right to retain. The manifest purpose of the legislature as indicated in ch. 411, Laws of 1901, was to make the salary fixed full compensation to the clerk for all services performed by him as such clerk, and it therefore provided that he should pay to the county treasurer "all fees,

*per diem,* and other emoluments of whatever kind received by him," and that the salary of clerks and deputies should be in "lieu of all fees, *per diem,* and compensation for services rendered."

The language of this statute is about as broad and sweeping as it could well be, and would seem to leave no doubt that it was the purpose of the legislature to make the salary full compensation for all services performed by the clerk as clerk and vest the county with all moneys earned by the clerk in his capacity of clerk of the circuit court.

But it is argued with much ability by counsel for appellant that the statute only contemplates the fee system under state laws and was not designed to cover, and does not cover, fees earned under the act of Congress relating to naturalization. The question is not free from difficulty. The act of Congress was passed in 1906, being an act to establish a uniform rule for the naturalization of aliens throughout the United States, and providing fees to be charged by clerks of courts exercising jurisdiction in naturalization cases, and further providing that such clerks are authorized to retain a certain portion of the fees received and pay over the balance to the Bureau of Immigration and Naturalization. Act 59th Congress, June 29, 1906, ch. 3592, § 13, 34 U. S. Stats. at Large, 600 (U. S. Comp. Stats. Supp. 1909, p. 483).

Before the passage of the above act of Congress, the state courts, under power conferred by Congress, naturalized aliens, and the clerks were by state statute allowed certain fees for their services. Sec. 747, Stats. (1898). Much stress is placed by counsel for appellant upon the act of 1906 as a uniform rule of naturalization as affecting the fees of clerks of circuit courts in naturalization proceedings and removing them from the fee system of state courts. And it is argued that since the passage of said act of Congress, ch. 411, Laws of 1901, does not include fees in naturalization proceedings. This argument is based upon the exclusive power

of Congress on the subject of naturalization and the particular language of the act, and further that the resolution and law upon which the plaintiff rests applies only to fees provided for at the time of the adoption of the resolution, hence do not cover fees provided by the act of Congress passed in 1906 and subsequent to the passage of the resolution. The argument is ingenious, but it seems to us that the statute was intended to cover all fees and emoluments coming to the clerk in his official capacity while holding the office upon the salary basis. We think it cannot be successfully maintained that if during the salary term the legislature of the state should increase the fee bill under the fee system as to clerks of courts, the clerks, though on a salary, could retain in addition to the salary the extra fees provided for by legislative enactment after the salary had been fixed. No reason appears why the same rule should not apply to the change in fees by Congress after the adoption of the resolution. The fees and emoluments to be turned over under the statute (ch. 411, Laws of 1901) are such as have been received by such clerk, and he is required to make a sworn statement at the end of each quarter of all fees, *per diem,* and emoluments collected by him, and file it with the county clerk. The clerk, therefore, takes the office upon the salary fixed and must account to the county treasurer for all fees and emoluments received by him in his official capacity during his term. The question then arises whether the act of Congress passed after defendant was put on the salary basis alters the situation. It is urged that, because prior to 1906 there was no federal law providing fees for clerks in naturalization proceedings, the fees in question could not have been contemplated by the legislature. But fees were then prescribed by the state statute (sec. 747, Stats. 1898), hence some fees for such services must have been in contemplation. The fact that Congress had exclusive power when it assumed to act, and that the fees prescribed are at variance with the fees

fixed by state statute, we do not regard significant so long as the acts performed by the clerk were official in the discharge of his duty as clerk. The courts of the state designated in the act have power to naturalize aliens, and the clerks perform services as clerks in such proceedings and receive fees as clerks for such services, and, whether such fees are fixed by act of Congress or by state law, they are fees or emoluments of the office within the meaning of ch. 411, Laws of 1901. Even if it be true, as contended by counsel for appellant, that the power of Congress is exclusive (*State ex rel. Newman v. Libby,* 47 Wash. 481, 92 Pac. 350), and that the state law is superseded as to amount of fees, the fees are nevertheless emoluments of the office of clerk within the meaning of the state law.

It is further argued that the words of the act of Congress that the clerks are "authorized" and "permitted to retain one half of the fees" involve the granting of a privilege to hold the fees as their own. We think the words used in this connection have reference solely to the adjustment under the act of Congress between the clerks and the bureau. Clearly they cannot be held to authorize or permit the clerks on salary basis to hold them as against the counties, if they are fees or emoluments which belong to the counties. So we come back to the proposition whether they are or are not.

It is insisted that such services are performed in a nonofficial capacity, therefore belong to the clerks exclusively and are not covered by the state law or the resolution requiring fees and emoluments received by clerks in their official capacity to be turned over to the county. And it is argued that clerks would not be obliged to turn over money earned in work purely nonofficial, as, for example, time not required in discharge of official duty spent in bookkeeping. This might be admitted, but it does not reach the question, because in the case before us the services were strictly official. The naturalization proceedings are proceedings in

court, and the clerk in the performance of services therein acts in his official capacity as clerk of the court. The act of Congress purports to confer jurisdiction to naturalize aliens on "all courts of record in any state." And the courts of record in this state have uniformly from an early day assumed such jurisdiction, and the clerks of the circuit courts have acted in their official capacity in such proceedings before and since the act of Congress. That the circuit courts of the state have jurisdiction to naturalize aliens is beyond question. This is not denied by counsel for appellant, but it is argued that the jurisdiction is limited or *quasi*-judicial in its nature, and that Congress might designate the board of aldermen of cities to determine the requisite facts to entitle to citizenship under the conditions prescribed by law. Whether Congress could have conferred the power on other bodies than courts of record we need not determine. It is sufficient that it has authorized courts to perform the function and provided the fees to be received by clerks for the performance of their duties as clerks of courts in that regard. The courts, having assumed to act, have the right to do so in the absence of any law of the state prohibiting such action. *Prigg v. Comm.* 16 Pet. 539; *Stephens, Petitioner,* 4 Gray, 559; *Levin v. U. S.* 128 Fed. 826.

We shall briefly refer to some of the principal authorities relied upon by appellant's counsel. In *U. S. v. Hill,* 120 U. S. 169, 7 Sup. Ct. 510, under an act of Congress providing in effect that the clerk shall not be allowed to retain of the fees and emoluments of his office for his personal compensation over expenses, including clerk hire, to be audited and allowed by the proper officer, a sum exceeding $3,500, and that the accounts should be examined and certified by the judge and be subject to revision by the accounting officers, it appeared in the case that for a great number of years naturalization fees had not been included in such fees in the clerk's return. All the facts were known to the judge who

passed on the accounts and the general custom was acquiesced in for a long period of time. Under the act of Congress there was no fee provided for in naturalization proceedings, but a fee of $3 was by custom charged by the clerks, and the court made rules respecting naturalization proceedings and the services. At page 179 (7 Sup. Ct. 515) the court said:

"It is for services rendered under these rules, and as a special officer of the court, and not as clerk, that these fees have been permitted. They were not duties pertaining to the office of clerk. They could as well have been performed by any other person designated by the court for the purpose; as by the district attorney, or a commissioner of the circuit court, or an attorney, or any suitable person not an officer of the court."

In *U. S. v. McMillan,* 165 U. S. 504, 17 Sup. Ct. 395, the court followed the decision in *U. S. v. Hill, supra.* In *U. S. v. Brindle,* 110 U. S. 688, 4 Sup. Ct. 180, Brindle held a public office upon a salary, and the act of Congress prohibited receiving compensation for discharging the duties of any other office. He was appointed to perform a service in no way connected with the office he held, and which was not an office known to the law, and it was held that the service had "no affinity or connection, either in its character or by law or usage, with the line of his official duty." Mechem, Public Officers, § 863, lays down the general rule that one holding an office is not rendered legally incompetent to discharge duties clearly extra-official, outside of the scope of his official duty. In *Evans v. Trenton,* 24 N. J. Law, 764, the treasurer of the city of Trenton performed services not part of the duties of his office, and it was held that he was entitled to compensation therefor in addition to his salary as treasurer. In *Leavenworth Co. v. Brewer,* 9 Kan. 307, it was held that a county attorney is not bound to go beyond his county to do business for the county, and if he does he is entitled to reasonable compensation therefor in addition to his

salary.   This was substantially ruled by this court in *Eagle River v. Oneida Co.* 86 Wis. 266, 56 N. W. 644, relied upon by appellant.   In *Mayor v. Muzzy*, 33 Mich. 61, it was held that one who was mayor and councilman of a city and an attorney at law could act for the city and defend a suit against it and recover the value of his services.   In *Kollock v. Dodge*, 105 Wis. 187, 80 N. W. 608, the points involved mainly were the scope of legislative power delegated to the city council and that under the delegated power the council determined that the services of the officer in question were not official, and that this was not an unwarranted exercise of power.

We have found this case by no means easy of solution. Some cogent reasons have been presented by counsel for appellant in support of their contentions.   However, after a careful examination of the case, the court have reached the conclusion that the judgment below should be affirmed.

*By the Court.*—The judgment below is affirmed.

A motion for a rehearing was denied April 26, 1910.