[Civ. No. 836.   First Appellate District.—December 13, 1910.]

# CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, Respondent, v. HARRY I. MULCREVY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellants.

NATURALIZATION IN SUPERIOR COURT—RETENTION OF ONE-HALF FEES BY COUNTY CLERK—SALARY—DUTY OF PAYMENT INTO TREASURY.— Where naturalization was had in the superior court of the city and county of San Francisco, under the act of Congress of June 29, 1906, which authorizes the clerk of any court to retain one-half of the fees collected for naturalization, and required him to pay the other half to the Bureau of Immigration and Naturalization, since the county clerk, who is *ex-officio* clerk of said court, is a salaried officer under the charter of said city and county, he cannot retain the one-half of said fees for his own use, but it is expressly required by section 34 of article XV of said charter that he "shall pay all money coming into his hands . as such officer, no matter from what source derived or received, into the treasury of the city and county of San Francisco, within twenty-four hours after receipt of the same."

ID.—NATURALIZATION FEES NOT RECEIVED AS AGENT FOR EXTRA WORK AND CLERK HIRE.—Since the county clerk has a salary of $4,000 per annum, and each of his deputies, assistants and copyists is a salaried officer of the city and county, aggregating a total salary list of $58,600, and the charter provides for additional assistants when deemed necessary by the supervisors, the contention that the naturalization fees were not received in his official capacity, but as a mere agent designated by the act of Congress as pay for his extra work and clerical hire, is not tenable.

ID.—PROVISIONS OF CHARTER CLEAR AND UNAMBIGUOUS—PAYMENT INTO TREASURY EXPLICITLY REQUIRED.—The provisions of the charter of the city and county of San Francisco being unambiguous, and as clear and explicit as language can make it, and it having expressly provided all the salaries required in the office of the county clerk, it does not admit of a doubt or quibble that he is required to pay all moneys coming into his hands, regardless of the source, into the treasury of the city and county.

ID.—MEANING OF PROVISION AS TO "SOURCE"—MONEY RECEIVED BY VIRTUE OF OFFICIAL POSITION.—The words, "no matter from what source derived," mean all the money coming into his hands by virtue and reason of his being the county clerk and *ex-officio* clerk of the superior court. It was by reason of that position only that

he was enabled to receive the naturalization fees, and he therefore received them in his official capacity.

ID.—EFFECT OF NATURALIZATION ACT—DISPOSITION OF MONEY RECEIVED.—Although the naturalization act authorized the clerk to retain one-half of the fees for naturalization, as against the government of the United States, the disposition of the money so received did not concern the United States government, but was matter solely between the clerk and the city and county of San Francisco.

ID.—CONDITION OF BOND OF CLERK—PRESENT AND FUTURE REQUIREMENTS OF LAW—NATURALIZATION ACT A LAW—TITLE TO FEES.—The condition of the bond of the county clerk is required by section 3 of article XV of the charter to be "that the principal shall faithfully perform all official duties then or that may be thereafter imposed or required by law, ordinance or the charter." The naturalization act of Congress is a law within the condition of such bond, requiring its duties to be faithfully performed, and its fees and emoluments to be paid into the treasury as the property of the city and county.

ID.—LIABILITY OF SURETY ON BOND.—The liability of the surety on the bond is commensurate with the obligation of the principal faithfully to perform the duties of his office under a present or future law, and to pay all moneys, no matter from what source derived, into the treasury of the city and county, within twenty-four hours after he receives it. From a breach of such obligation, the liability of the surety follows.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Jas. F. Tevlin, for Harry I. Mulcrevy, Appellant.

L. A. Redman, and Jewel Alexander, for Fidelity and Deposit Company of Maryland, Appellant.

Percy V. Long, City Attorney, Edwin F. Williams, Assistant City Attorney, and J. F. English, Assistant City Attorney, for Respondent.

COOPER, P. J.—This action was brought to recover of defendant, Mulcrevy, county clerk and *ex-officio* clerk of the superior court of the city and county of San Francisco, and his codefendant, as surety on his official bond, the sum of $2,972, with interest from certain dates as set forth in the

complaint, on account of moneys received and collected by
him in his official capacity as such clerk, in certain naturaliza-
tion proceedings which occurred during his term of office.
Upon motion of plaintiff, and after defendant had answered,
the court ordered judgment for plaintiff upon the pleadings.
This appeal is from the judgment, and raises only questions
of law.

The facts are in substance as follows: Defendant Mulcrevy
was, at the November election in 1905, elected county clerk
for the city and county of San Francisco for the term of two
years commencing on the eighth day of January, 1906. After
his election and on the first day of December, 1905, he made
and filed his official bond, with the defendant corporation as
surety, which bond was duly approved as required by law.
This bond contained the provision and condition that Mul-
crevy should "faithfully perform all official duties that now
are or may hereafter be imposed upon or required of him
by law, ordinance or the charter of the city and county of
San Francisco." By his election and qualification as such
clerk he became and was thereafter during his term of office
*ex-officio* clerk of the superior court of said city and county.
After he had been so elected and had so given his official bond
and entered upon the discharge of his duties, and on the
twenty-ninth day of June, 1906, Congress passed an act (34
Stats. at Large, 596, [U. S. Comp. Stats., Supp. 1909, p. 97]),
entitled: "An Act to establish a Bureau of Immigration and
Naturalization, and to provide for a uniform rule for the
naturalization of aliens throughout the United States."
Under said act exclusive jurisdiction as to naturalization is
conferred upon special federal courts and upon all courts of
record in any state or territory having a seal, a clerk, and
jurisdiction in law or equity in which the amount in contro-
versy is unlimited. The duties of the clerks of the courts are
set forth, as to taking declarations of intention to become
citizens in triplicate, and as to sending duplicates to the
Board of Immigration and Naturalization, the receiving of
petitions up to the time of final report to the bureau, and
other services detailed in said act.

The provisions of the act so far as material are as follows:

"The clerk of any court collecting such fees is hereby au-
thorized to retain one-half of the fees collected by him in each

naturalization proceeding; the remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts which they are hereby required to render the Bureau of Immigration and Naturalization.

"*Provided,* That the clerks of courts exercising jurisdiction in naturalization proceedings shall be permitted to retain one-half of the fees in any fiscal year up to the sum of three thousand dollars, and that all fees received by such clerks in naturalization proceedings in excess of such amount shall be accounted for and paid over to such Bureau as in case of other fees to which the United States may be entitled under the provisions of this Act. The clerks of the various courts exercising jurisdiction in naturalization proceedings shall pay all additional clerical force that may be required in performing the duties imposed by this Act upon the clerks of courts from fees received by such clerks in naturalization proceedings. And in case the clerk of any court collects fees in excess of the sum of six thousand dollars in any one year, the Secretary of Commerce and Labor may allow to such clerk from the money which the United States shall receive additional compensation for the employment of additional clerical assistance, but for no other purpose, if in the opinion of said Secretary the business of such clerk warrants such allowance."

After the act went into effect Mulcrevy collected $5,944 as clerk of the superior court in naturalization proceedings, and accounted for and paid over to the Bureau of Immigration and Naturalization one-half thereof, as required by the act. The other one-half he kept himself, and has not paid over the same to the city and county of San Francisco, his contention being that it was intended by the act of Congress as pay for his extra work and clerical hire in such naturalization proceedings, and that the fees were not received by him in his official capacity, but merely as an agent designated by the act of Congress to perform certain services in naturalization proceedings.

The charter of the city and county of San Francisco under which Mulcrevy was elected, and which was in force at the time his bond was given, provides as follows: "Every bond shall contain a condition that the principal shall faithfully

perform all official duties then or that may thereafter be imposed upon or required of him by law, ordinance or this charter, and that at the expiration of his term of office he will surrender to his successor all property, books, papers and documents that may come into his possession as such officer. (Sec. 3, art. XV.) . . . The salaries provided in this charter shall be in full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county of San Francisco within twenty-four hours after receipt of the same.'' (Sec. 34, art. XV.)

The salary of Mulcrevy as such county clerk was fixed in the charter as $4,000 per annum. He was also allowed, for the purpose of aiding him in the discharge of his official duties, a chief registrar at an annual salary of $2,400; a cashier at an annual salary of $1,800; twelve courtroom clerks at an annual salary of $1,500 each; five registry clerks at an annual salary of $1,800 each; ten assistant registry clerks at an annual salary of $1,500 each; sixteen copyists at an annual salary of $1,200 each, and four clerks for the police court, at an annual salary of $1,500 each. The total salary list as so fixed and allowed for the office amounts to $58,600 per annum; and it would seem that it was intended to cover all services that might be required of the county clerk, and the pay of all deputies and employees that might be necessary in performing such services.

Moreover, in addition to the above salaries it is expressly provided in the charter (sec. 35, art. XV) that when any officer, board or department shall require additional deputies, clerks or employees, application shall be made to the mayor therefor, and upon such application the mayor shall make investigation as to the necessity for such additional assistants, and that if he find the same necessary, he may recommend the supervisors to authorize the appointment of such additional deputies, clerks or employees, and thereupon the board of supervisors, by an affirmative vote of not less than fourteen members, may authorize such appointments and provide for the compensation of such appointees. (See reference to the application of this section in *Harrison* v. *Horton,* 5 Cal. App. 415, [90 Pac. 716].)

The charter having expressly provided a salary for the county clerk, and a salary for his many assistants, deputies and copyists, states that such salary shall be "full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county of San Francisco within twenty-four hours after receipt of the same." The money came into the hands of Mulcrevy as such clerk, although the source from which it was derived and received was the amounts paid to him as fees in naturalization proceedings as prescribed and provided for in the act of Congress; and it was his duty to pay it into the treasury of the city and county. Language could not be more explicit. It does not admit of doubt or quibble as to its meaning. "No matter from what source derived" means all the money coming into his hands by virtue of and by reason of his being such county clerk and *ex-officio* clerk of the superior court. It was by reason of his election as county clerk and his taking office and giving his bond, and receiving a salary of $4,000 per annum, that he was enabled to receive the fees for naturalization proceedings in the superior court. He received them in his official capacity. He was *ex-officio* clerk of the superior court in which the fees were collected under the provisions of the act of Congress. The act authorized him to retain one-half the fees collected by him; but as to what he was to do with such half so retained did not concern the United States government, but was a matter solely between himself and the city and county of San Francisco. It was his duty to receive and file complaints, answers, pleadings, petitions in probate, and to perform all services required of him, for which he received fees. It was his duty to perform all services required of him by the laws of the state at the time he took office, and all services that might be required of him by any subsequent law of the state enacted after his accession to office. Such fees were not his, but belonged to the city and county, he being in one sense the agent of the city and county in collecting such fees. It was equally his duty to perform services in naturalization proceedings after the passage of the law subsequently enacted by Congress, and to receive fees for such services, but the fees when so received

belonged to the city and county of San Francisco. It was not for him to say that the services were performed under the authority of the United States, and not under the authority of the state. His bond contained the condition that he would faithfully perform all official duty that might thereafter be imposed upon him by law. The act of Congress was a law.

This case is the same in principle as *In the Matter of Dodge*, 135 Cal. 512, [67 Pac. 973], where it was held that the county assessor was not entitled, under the charter, to retain for his own use percentages on poll taxes collected under the state law and for the benefit of the state. It was there said, after discussing the provisions of the charter invoked here: "The provisions of the freeholders' charter under consideration, requiring city and county officials to pay into the county treasury all moneys received by them in their official capacity, is more explicit if possible than the provisions of the County Government Act in the case of District Attorney Fay. It is clear that it was intended that the salaries should be in full for all official services of every kind whatever, and that the officer is not entitled to retain for himself any fees or perquisites for the performance of official duty. Such fees or perquisites, if any received, belong to the public corporate body that employed him."

The views herein expressed are in accord with the views of the supreme court of Wisconsin, as reported in *Barron County v. Beckwith*, 142 Wis. 519, [135 Am. St. Rep. 1079, 124 N. W. 1030], where the same question was discussed. It was there claimed, as it is claimed here, that the official duty of the clerk did not include services in naturalization proceedings under a law subsequently enacted by Congress, but the court held otherwise, saying: "The argument is ingenious; but it seems to us that the statute was intended to cover all fees and emoluments coming to the clerk in his official capacity while holding the office upon a salary basis. We think that it cannot be successfully maintained that if, during the salary term, the legislature should increase the fee bill under the fee system as to clerks of courts, that the clerks, though on a salary basis, could retain, in addition to the salary, the extra fees provided for by legislative enactment after the salary had been fixed. . . . The courts of the state designated

in the act have power to naturalize aliens, and the clerks perform services as clerks in such proceedings, and receive fees as clerks for such services; and whether such fees are fixed by act of Congress or by state law, they are fees or emoluments of the office within the meaning of chapter 411, Laws of 1901.''

Our attention is called to *Eldredge* v. *Salt Lake County* (Utah), 106 Pac. 939, where the supreme court of Utah held that the clerk may retain such fees under the act of Congress in question. While we do not approve of the doctrine as laid down in the Utah case, it is sufficient to say that it can be readily distinguished from the case at bar. There the law provided that the county officers ''shall be required by law to keep true and correct account of all fees collected by them, and to pay the same into the proper treasury and the officer whose duty it is to collect such fees shall be held responsible on his bond for the same.'' It does not appear from the opinion to have been a condition of the bond, or the duty of the clerk, to perform all official duties that may have been imposed upon him by law, nor did the statute require the clerk to pay all moneys, ''no matter from what source derived,'' into the treasury of the county.

It is claimed by defendant surety company that even if defendant Mulcrevy is liable, the surety company is not, for the reason that the bond was given for the performance of official duties, and that it was not part of Mulcrevy's official duty to act in behalf of the United States and receive fees in naturalization proceedings. But the bond was conditioned that Mulcrevy would faithfully perform all official duty that might thereafter be imposed upon him by law; and the law thereafter imposed upon him the duty of performing services in naturalization proceedings. It was also his official duty to turn the money over to the treasury of the city and county of San Francisco within twenty-four hours after he received it. The liability of the surety follows.

The judgment is affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1911.