[No. 18049. *En Banc.* June 30, 1924.]

# KING COUNTY, *Respondent,* v. JOHN STRINGER *et al., Appellants.*[1]

COUNTIES (29, 30)—OFFICERS—DUTIES—COMPENSATION—FEES AND COLLECTIONS—STATUTES. Moneys received by a sheriff from the Federal government for the keep of Federal prisoners, belong to the county in view of his official duty to keep such prisoners as provided by Rem. Comp. Stat., § 10209, and §§ 4210 and 4218, making the office of sheriff a salaried office, and requiring payment into the county treasurer of all sums that come into his hands for fees and charges in or by virtue of his office.

STATUTES (28)—TITLE AND SUBJECTS. The title "an act relating to city, town and county jails . . . for the detention of . . . prisoners . . . relating to the duties of county sheriffs" is sufficiently broad to embrace Rem. Comp. Stat., § 10209, making it the duty of sheriffs to receive and keep Federal prisoners, under provisions made by the United States for their support.

COUNTIES (35)—OFFICERS (57)—LIABILITY ON OFFICIAL BONDS. A sheriff who received $21,732.64 from the Federal government for the support of Federal prisoners, and only accounted to the county for the sum of $15,769.80, is indebted to the county for the balance.

SAME (35)—OFFICERS (57)—OFFICIAL BONDS—EXTENT OF LIABILITY—TIME. The sureties on the official bond of the sheriff are liable for the moneys received by the sheriff from the Federal government after the expiration of his term of office and not accounted for, for the support of prisoners earned prior thereto.

MACKINTOSH, BRIDGES, and HOLCOMB, JJ., dissenting as to the liability of appellant Stringer.

MAIN, C. J., PARKER, and MITCHELL, JJ., dissenting in part.

[1]Reported in 227 Pac. 17.

Cross-appeals from a judgment of the superior court for King county, Mills, J., entered August 7, 1922, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on an official bond. Affirmed on defendants' appeal; reversed on plaintiff's appeal.

*Poe, Falknor & Falknor, Caldwell & Evans,* and *C. B. White,* for appellants.

*Malcolm Douglas* and *Arthur Schramm, Jr.,* for respondent and cross-appellant.

PEMBERTON, J.—King county commenced this action to recover from the defendant Stringer, formerly sheriff, and the National Surety Company, surety on his official bond, for moneys alleged to be the property of the county, received by Stringer by virtue of his office and not accounted for or paid over to the county, together with interest.

The complaint alleges in substance that Stringer was the duly elected and qualified sheriff of King county for the term 1919-1920; that the surety company was surety on his official bond in the sum of $5,000; that, by virtue of Stringer's office as sheriff, he received from the United States for the support, care and custody of United States prisoners while in his keeping in the county jail, which was being maintained, including sustenance and the care of all prisoners, wholly at the expense of the county, sums of money aggregating $21,732.64, of which amount he had accounted for and paid into the county treasury only $15,769.80, retaining and appropriating to his own use the sum of $5,962.84 without authority of law. The denials in the answer constitute little else than a denial of Stringer's unlawful appropriation of any money received by him from the United States, manifestly upon the theory

that the money retained by him that was received from the United States was at no time the property of the county but was his individual property.

As an affirmative defense, it is alleged, in substance, that Stringer was sheriff of King county during two terms, January, 1917, to January 10, 1921; that, prior to May, 1919, during his term as sheriff, the United States placed in his custody in the county jail numerous prisoners at different times, including Shubart, Nutter, Comstock and Cave, each of which four just named, deeming himself unlawfully imprisoned by Stringer, commenced an action in the superior court to recover damages from Stringer for such alleged unlawful imprisonment, the aggregate of such claims being $39,000; that, prior to May, 1919, the commissioners of King county "had fixed and ordered a per diem charge of sixty cents for the keeping of each United States prisoner in the King county jail, and had arranged with Henry M. White, commissioner of immigration at Seattle, Washington, for receiving United States prisoners for said charge of sixty cents per day for each United States prisoner." It is further alleged that, prior to May, 1919, the auditing department of the United States government refused to allow King county more than sixty cents per day for the maintenance, care and custody of such prisoners; that, in the spring of 1919, while the actions for damages referred to were pending, Stringer

"entered into negotiations with the inspector of prisons of the United States, who was employed by the *Attorney General* of the United States, with a view and for the purpose of making arrangements whereby plaintiff in this case would receive the maximum amount fixed by the county commissioners for the support of the United States prisoners in the King county jail and stockade, and at the same time, over and above

such sum, a reasonable amount as would protect and save harmless the defendant, individually, not as sheriff, on account of such pending litigation hereinbefore referred to as having been instituted against him by the United States prisoners, and to save him harmless on account of such other or possible litigation as might arise in connection with the receipt, care, custody and control of other subsequent United States prisoners . . . that the *Attorney General* of the United States, in accordance with the United States statutes, on or about May 9, 1919, entered into an arrangement, effective June 1, 1919, under and by virtue of which the plaintiff in this case received sixty cents per day, the amount previously fixed by the county commissioners, for each United States prisoner kept in the King county jail, and over and above such amount as the property of this defendant John Stringer, individually, received the sum of twenty-five cents per day for each United States prisoner placed in the King county jail, and that such payment of twenty-five cents per day was intended by the United States government to be and was over and above any sum of money whatever that the plaintiff should receive in connection with the care, custody, control or subsistence of United States prisoners placed in the King county jail, and was intended by the United States government to be and was the individual and absolute property of this defendant, John Stringer, to indemnify and protect him on account of litigation then pending or that might thereafter arise for which he would be or was individually responsible on account of United States prisoners theretofore or thereafter placed in the King county jail; . . . that all moneys under said arrangement with the *Attorney General* relative to the placing of United States prisoners in the county jail which were to be paid to the plaintiff were promptly paid to him, and that said sum of sixty cents per day was understood to be and was full and adequate compensation to the plaintiff for the subsistence, care, custody and control in the King county jail of prisoners of the United States.''

The county demurred to this affirmative defense upon the ground that it did not state facts sufficient to constitute a defense. The demurrer was sustained.

The cause proceeded to trial on the complaint and the denials contained in the answer, resulting in the trial court taking the case from the judgment of the jury and deciding as a matter of law that the county is entitled to recover from John Stringer the sum of $6,-522.25, with interest, that being the full amount unaccounted for received from the United States by him before and after he ceased to be sheriff, with interest thereon, and also that the county recover from the surety company the sum of $2,850.09, that being the amount unaccounted for that was received from the United States by Stringer before the expiration of his term as sheriff, the court holding that the surety company was not liable for money that was received by Stringer after he had ceased to be sheriff, though he was personally liable therefor. From this disposition of the case in the superior court, both defendants have appealed, and thereafter the county appealed from so much of the judgment as denied it recovery against the surety company to the extent of $5,000, the amount of the official bond.

The principal contention on behalf of Stringer and the surety company is that the trial court erred in sustaining the county's demurrer to the affirmative defense, and, in turn, in excluding evidence offered at the trial tending to prove facts in substance as therein alleged. This offer of proof was made not only upon the theory of an affirmative defense, but also upon the theory that the evidence offered was admissible under the denials of the answer. Stated another way, the main question is as to the right of Stringer to retain as his own any portion of the money received by him

from the United States for the maintenance or in connection with his care of United States prisoners in the county jail, conceding the facts to have been as alleged in the affirmative defense in the offer of proof.

It hardly needs argument to demonstrate that Stringer received all of the moneys in question because of the fact that he was the sheriff of King county, and because of the fact that he rendered services which under the state law he was required to render as sheriff, although, in a sense, he rendered them for the United States. Had he not been the sheriff of King county he would not have been enabled to render any such service to the United States or to receive its money therefor. He was a county and not a Federal officer. In rendering such service he used the means and property provided by, and that belonged to, the county, at its, not his, expense, and without which he could not have rendered the services. One of the duties sheriffs are required to perform is prescribed in § 6, ch. 103, Laws of 1917, p. 347, being § 10209, Rem. Comp. Stat. [P. C. § 3425], as follows:

"It shall be the duty of all county sheriffs or other officials having charge of jails to receive and keep in such jail, where room therefor is available, all prisoners committed thereto by process or order issued under the authority of the United States until discharged according to law, the same as if such prisoners had been committed under process issued under authority of the state of Washington, provisions being made by the United States for the support of said prisoners, and any extra guards or attendants required."

No argument is needed to demonstrate that this is an official duty prescribed by statute. A number of constitutional and statutory provisions make plain and certain the intent that certain county officials, including sheriffs, shall be compensated for the performance

of all their official duties only by salaries fixed by or in pursuance of statute. Stringer, as sheriff of King county, was a salaried officer, his salary being payable by the county as provided for by statute. In § 8, art. 11, of the state constitution it is provided that "the legislature shall fix the compensation by salaries of all county officers," with certain exceptions not necessary to notice here. Rem. Comp. Stat., §§ 4210 and 4218 [P. C. §§ 1603, 1566a], providing, as follows:

"Sec. 4210. In accordance with the classification herein made, the county officers of the counties of this state, according to their class, shall receive as a salary for the services required of them by law, or by virtue of their office, which salary shall be full compensation for all services of every kind and description rendered by the officers named herein: Provided, that in case the salaries herein provided for are, in the judgment of the board of county commissioners, inadequate for the services required of the officers named herein, then the said board of county commissioners may allow such officer a deputy, or such number of deputies as, in their judgment, may be required to do the business of such office in connection with the principal, for such time as may be necessary, and at such salary as they may designate; the said deputies shall be paid in the same manner and time as their principals: Provided, that the county commissioners shall pay the actual traveling expenses of the sheriff while on official duties, to be audited by the board of county commissioners."

"Sec. 4218. Every county officer, whom by the laws of this state is allowed a salary, shall, on the first Monday of each month, pay into the county treasury all moneys and sums which have come into his hands for fees and charges in his office, or by virtue of his office, during the preceding month. And no officer is permitted to retain to his own use or profit any sums paid him in his office or by virtue of his office, no matter from what source, but all of such moneys so paid him by virtue of the laws of this state, or of the United States, shall be the property of the county."

In *Franklin County v. Barnes*, 68 Wash. 488, 123 Pac. 779, this court had under consideration the question of the right of the county, as opposed to the personal right of its clerk, to one-half of the fees charged and collected by the clerk in naturalization proceedings under a Federal statute which, in terms, allowed the clerk to retain one-half of such fees, the other half to go to the United States. It was squarely held that, notwithstanding the terms of the Federal statute, the clerk being an officer of the state and county, who was paid a salary for the performance of all his official duties, including those in naturalization proceedings, the half of the fees permitted and prescribed by the Federal statute to be retained by him became the property of the county. Directly to the point it was said:

"It can be no matter of concern to the United States nor to the bureau of immigration and naturalization, the beneficiary of one-half of the fees, what disposition be made of the other half retained by the clerk."

A similar problem was presented to the court of appeals of California, by order of the supreme court of that state, in *City and County of San Francisco v. Mulcrevy*, 15 Cal. App. 11, 113 Pac. 339, under a governing statute or charter provision touching the clerk's duties, providing, among other things, that certain officers' salaries, including that of clerk, should be in full compensation for all services rendered, and that "every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county of San Francisco;" which, it will be noticed, is in substance the same as § 4218, Rem. Comp. Stat., *supra*, providing for payment into the county treasury by county officers, including the sheriff, of all fees and charges collected "by virtue of his office," and not

permitted to retain any "no matter from what source." The court of appeals of California said:

"The money came into the hands of Mulcrevy as such clerk, although the source from which it was derived and received was the amounts paid to him as fees in naturalization proceedings as prescribed and provided for in the act of Congress; and it was his duty to pay it into the treasury of the city and county. Language could not be more explicit. It does not admit of doubt or quibble as to its meaning. 'No matter from what source derived' means all the money coming into his hands by virtue of and by reason of his being such county clerk and ex officio clerk of the superior court. It was by reason of his election as county clerk and his taking office and giving his bond, and receiving a salary of $4,000 per annum, that he was enabled to receive the fees for naturalization proceedings in the superior court. He received them in his official capacity. He was ex officio clerk of the superior court in which the fees were collected under the provisions of the act of Congress. The act authorized him to retain one-half the fees collected by him; but as to what he was to do with such half so retained did not concern the United States government, but was a matter solely between himself and the city and county of San Francisco. It was his duty to receive and file complaints, answers, pleadings, petitions in probate, and to perform all services required of him, for which he received fees. It was his duty to perform all services required of him by the laws of the state at the time he took office, and all services that might be required of him by any subsequent law of the state enacted after his accession to office. Such fees were not his, but belonged to the city and county, he being in one sense the agent of the city and county in collecting such fees."

A further hearing was denied in that case by the supreme court of California, and on a writ of error to the supreme court of the United States, the decision and judgment were affirmed. *Mulcrevy v. City and*

*County of San Francisco,* 231 U. S. 669, 58 L. Ed. 425.

We do not fail to note that in those decisions the right and duty of clerks to retain one-half of the fees was a matter of express statute, while in the case before us the money collected from the United States by Stringer was not provided for by any express or direct statutory rule, but was authorized to be paid in by administrative and auditing officers of the United States. We must and do presume, however, that the payments were made in pursuance of lawful authority from the United States. Since we have seen that the duty of receiving into custody and maintaining United States prisoners in the county jail or stockade, the county's property, was prescribed by state law as a part of Stringer's official duties as sheriff, and that all expense incident thereto was paid for by the county, we think that in principle our problem is not materially different from that presented in the *Franklin County* and *San Francisco County* cases. The fact that the board of county commissioners had determined to make a charge of sixty cents per day for each United States prisoner for the maintenance and custody of such prisoner, we think it must be assumed, did not render it unlawful on the part of the United States to voluntarily pay more; but that does not argue, as we view the situation, that Stringer was entitled to the excess over sixty cents per day voluntarily paid by the United States, even though its administrative officers allowing and paying such excess intended it to be for Stringer's personal benefit. Such allowance and payment were after all nothing but compensation for the performance by Stringer of a part of the *official duties he was required to perform by express state statute,* and he will not be allowed to make the performance of a part of his official duties a basis

for extra compensation at the sacrifice of the rights of the county that pays him a salary in full compensation for the performance of his official duties. The risk of performing such official duties lawfully with reference to the rights of others, including the risk of suits against him by such others, is, we think, incidental and somewhat usual in the discharge of such official duties, for which he was also compensated by salary.

Contention is made that § 6 of the act of 1917, p. 347; § 10209, Rem. Comp. Stat., above quoted, is unconstitutional because the title of the act in which that section is found is not broad enough in its declaration of subject-matter to include the provisions of that section. The title of the act is:

"An Act relating to city, town and county jails, workhouses, workshops, stockades and other places for the detention, confinement and employment of county, city and town prisoners, and authorizing the joint ownership, control and operation of said institutions, or any of same and for the care, keep, custody and employment of persons under sentence confined therein, relating to the duties of county sheriffs, and other peace officers."

The argument is, in substance, that there is nothing in the language of the title of the act referring to the care and custody of United States prisoners; but that, we think, was not necessary. The title says that the act relates to "city, town and county jails, workhouses, workshops, stockades and other places for the detention, confinement and employment of county, city and town prisoners." These quoted words we think can well be regarded as having reference only to the nature of the institutions which are purported to be regulated, that is, they are but generally descriptive of the institutions purported to be regulated and mean no more

nor less than city, town and county penal institutions. The words "relating to the duties of county sheriffs," it seems to us, may well be held to embrace the subject-matter of § 6 of the act. The judgment of the legislature adjudging the sufficiency of a title to an act will not be overridden by the courts except upon a very plain violation of the constitutional requirement that the subject of an act must be expressed in its title. *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086. We think that the provisions of § 6 of the act of 1917 are fairly within the subject-matter as expressed in the title. It is worthy of note in this connection that our decision in *Skagit County v. American Bonding Co.,* 59 Wash. 8, 109 Pac. 199, supports the view that the liability of Stringer and the surety company is not wholly dependent on the fact that Stringer's services were required by statute. It follows that the trial court properly sustained the demurrer of the county to the affirmative defense and properly sustained the objections to the offered evidence tending to prove such facts, whether such offer be viewed as made in support of the affirmative defense or as disputing the right of the county to recover under the denials of the answer.

On the merits of the case there is little left to be said, since it conclusively appears from the evidence and admissions in the pleadings that the jail in charge of Stringer as sheriff was in all respects maintained at the expense of the county, including the sustenance of the prisoners therein and the proper guarding of them; and that Stringer received from the United States for official services rendered as above noticed the sum of $21,732.64, and accounted for and paid to the county only the sum of $15,769.80. It was as sheriff of the county that he rendered the services, and

when he received compensation from the Federal government it was money had and received for the county. This, we think, renders it plain that Stringer is indebted to the county, as found by the trial court.

The county has appealed because the court refused recovery against the surety in the full amount of the bond, $5,000. That is, the trial court refused to allow judgment against the surety in excess of $2,850.09, for the reason that all above that amount not paid to the county was received by Stringer after the expiration of his term of office, though earned prior thereto. The bond was conditioned, among other things, that the principal should faithfully discharge all the duties of his office according to law. It was his duty, upon the expiration of his term of office, to turn over to the county his right to collect from the Federal government, and his failure so to do and thereafter to collect money belonging to the county was not a faithful discharge of the duties of his office—the intent and purpose for which the bond was given. To relieve the bonding company of liability for amounts paid in by the United States government in its regular course of business and received a few days after the sheriff's term of office expired, would leave the way open for every bonding company to escape liability on its bond given to secure the faithful performance of official duty, if the officer delay the acceptance of public funds until after the hour has struck when his official relation has ceased. Such a holding would defeat both the intent of the bond and sound public policy.

Affirmed on the appeal of the defendants. Reversed on the county's appeal with directions to the trial court to increase the judgment against the surety company to $5,000.

TOLMAN and FULLERTON, JJ., concur.

MACKINTOSH, J. (dissenting in part)—I cannot agree that the appellant Stringer is liable in any amount in this case, and therefore dissent from that portion of the foregoing opinion which imposes liability; but do agree with the opinion in so far as it affects the bond company, for if Stringer is liable at all, the bonding company is liable up to the amount of its bond for the sums received by him, even though part of such amount was not paid to him until after his term of office had expired, for it came "into his hands by virtue of his office of county sheriff," otherwise he would not be liable to the county for it.

To relieve the bonding company of liability for the amount paid in by the United States government in its regular course of business and received a few days after Stringer's term of office had expired, would leave the way open for every bonding company to escape liability on its bond, given to secure the faithful performance of the duties of a public official, if that official delays the acceptance of public funds until after the hour has struck when his official connection has ceased. This would defeat both the intent of the bond and sound policy.

BRIDGES and HOLCOMB, JJ., concur with MACKINTOSH, J.

PARKER and MITCHELL, JJ. (dissenting in part)— We concur in the foregoing opinion in so far as it holds Stringer liable for all monies received by him, and in so far as it holds the surety company for all monies collected by Stringer while he was sheriff, but dissent from the foregoing opinion in so far as it holds that the surety company is liable for any portion of the monies collected by Stringer after he ceased to be sheriff.

The official bond of Stringer was executed by him and the surety company at the beginning of and for the 1919-1920 term here in question, and was conditioned, so far as we need here notice its terms, that "said Stringer shall faithfully pay over according to law all monies which shall come into his hands by virtue of his office as county sheriff of King County, Washington." It seems to us it needs but little argument to demonstrate that the surety company was not bound to make good any sums of money which Stringer collected after he ceased to be sheriff. No decision has come to our notice holding to the contrary under circumstances such as we have in this case. A similar problem was presented to the court of appeals of Missouri in the case of *State v. Dailey,* 4 Mo. App. 172, wherein presiding Judge Lewis, speaking for the court, very pertinently observed:

"As to the money received by Dailey when no longer in office there could be no liability on his official bond. It was not received 'by virtue of his office,' for office he had none. If he could collect by that right a month after his term, he might do so with equal propriety twenty years later. The sureties would thus be held to guarantee his conduct for the remainder of his life, instead of a definite period fixed by law and by the terms of their bond. *Moss v. The State,* 10 Mo. 338; *The State v. Grimsley,* 19 Mo. 178."

In *People v. Toomey,* 122 Ill. 308, 13 N. E. 521, the supreme court of Illinois expressed the same view upon a like problem, citing a number of authorities in support thereof. Our own decision in *King County v. Ferry,* 5 Wash. 536, 32 Pac. 538, 34 Am. St. 880, 19 L. R. A. 500, contains observations supporting this conclusion.

We are of the opinion that the judgment of the trial court should be in all things affirmed.

MAIN, C. J., concurs with PARKER and MITCHELL, JJ.