[S. F. No. 2506. In Bank.—February 18, 1902.]

In the Matter of the Controversy without Action between WASHINGTON DODGE, Assessor of the City and County of San Francisco, Respondent, and THE CITY AND COUNTY OF SAN FRANCISCO, Appellant.

POLL-TAXES—COMPENSATION OF ASSESSOR OF SAN FRANCISCO—SALARY—PERCENTAGE NOT ALLOWED.—The assessor of the city and county of San Francisco is only entitled to receive the salary fixed by the charter of the city and county, which is therein declared to be "in full compensation for all his services," and he is not entitled to receive to his own use the percentage on poll-taxes fixed by section 3852 of the Political Code. [Beatty, C. J., dissenting.]

ID.—CONSTITUTIONAL LAW—COMPENSATION PROPERLY FIXED BY CHARTER.—Under section 8½ of article XI of the constitution, the city and county of San Francisco was authorized to fix the compensation of county officers, and to provide for the number of deputies that each shall have, and for the compensation payable to each of the deputies.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Franklin K. Lane, City Attorney, for Appellant.

Gavin McNab, for Respondent.

VAN DYKE, J.—The controversy in this case was submitted to the court below without action, under sections 1138, 1139, and 1140 of the Code of Civil Procedure. From the agreed statement of the case, it appears that between the first Mondays in March and July, 1900, said Dodge, as assessor of the city and county of San Francisco, collected and paid into the treasury of said city and county, on account of poll-taxes, the total sum of $93,872, without any deductions on account of percentage for the collection of the same, but that said Dodge, as assessor, claims the sum of $14,080.80, being fifteen per cent of the entire amount of poll-tax so collected, for and on account of fees and percentage; that he has demanded of the treasurer of said city and county that he pay over the said sum, but that the said treasurer refused, and still refuses, to do so. The agreed statement further shows: "That said sum of $93,872 so collected by said Dodge, as assessor as aforesaid, and paid into the treasury of the city and county of San Francisco, was so collected by him and his deputies, clerks, and assistants without any cost or expense to said Dodge or his said deputies, clerks, or assistants whatsoever; that said Dodge, as assessor of the city and county of San Francisco, receives the sum of $4,000 per annum as and for salary and compensation for services rendered by him in his official capacity, which said sum is payable monthly out of the general fund of the treasury of the city and county of San Francisco, and each and all of his deputies, clerks, and assistants receive, and received during all the times mentioned, certain fixed salaries and compensations, payable and paid out of the said general fund."

Upon this agreed statement, the court below rendered judgment in favor of the assessor, from which judgment the city appeals.   The sole question in controversy is whether the assessor of the city and county of San Francisco is entitled to

retain the commissions allowed for the collection of poll-taxes, under section 3862 of the Political Code. After directing, in the preceding sections, how, when, and by whom the poll-taxes are collected, section 3862 provides: "The assessor for services rendered in the collection of poll-taxes shall receive the sum of fifteen per cent; and the collector for services rendered in the collection of poll-taxes on the delinquent list, including the publication, shall receive the sum of twenty-five per cent on all delinquent poll-taxes collected by him." This section has remained the same since the last amendment of 1877-1878.

In the earlier history of the state it seems to have been the policy of the law to compensate county and city officials mostly or entirely by the fees collected for the work performed by such officials. In consequence of abuses growing out of this fee system, a change in the mode of compensating public officers is indicated in the constitution adopted in 1878-1879. The compensation of public officials, city and county, at present is mostly by way of a fixed salary, in lieu of fees. In some cases, however, county officials are still allowed to retain certain fees. It is enjoined upon the legislature by the constitution to regulate the compensation of officers in proportion to duties, and for this purpose the counties are to be classified by population, and "it shall provide for the strict accountability of county and township officers for all fees that may be collected by them, and for all public and municipal moneys which may be paid to them, or officially come into their possession." (Art. XI, sec. 5.) By the County Government Act of 1897, the city and county of San Francisco falls within the first class. (Stats. 1897, sec. 157, p. 492.) By the next section (158, p. 496) it is povided: "In counties of this class the officers shall receive as compensation for the services required of them by law, or by virtue of their office, the salaries and fees fixed by law as compensation," and the County Government Act does not regulate the compensation of officers belonging to that class, that being left to the law organizing the body politic constituting the first class,—to wit, the city and county of San Francisco. By section 8½ of article XI of the constitution, adopted by way of amendment, November, 1896, it is declared: "Where a city and county government has been merged and consolidated into one municipal government, it shall also be

competent in any charter framed under said section 8 of said article XI to provide for the manner in which, the times at which, and the terms for which the several county officers shall be elected or appointed, for their compensation, and for the number of deputies that each shall have, and for the compensation payable to each of such deputies.''

The charter for the government of the consolidated city and county of San Francisco, adopted January 26, 1899, contains provisions for the election and terms of officers under the same, and fixes their compensation, in pursuance of section $8\frac{1}{2}$ of article XI of the constitution. It is provided in said charter, under the chapter with reference to the assessor, that, ''He shall receive an annual salary of $4,000, which shall be in full compensation for all his services.'' Provision is made in the same chapter for the appointment of the necessary clerks and deputies to assist the assessor in the discharge of his duties, prescribing a fixed salary in each case to compensate them for their services. For the purpose, as it would appear, of removing all doubt, it is provided under the article on miscellaneous subjects (sec. 34): ''The salaries provided in this charter shall be in full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county within twenty-four hours after receipt of the same.''

It is claimed, however, on the part of the respondent that the duty of the assessor, as provided in the charter, is merely to assess taxable property within the city and county, and that the collection of the poll-tax is not a part of his duty as such assessor. But the poll-tax is collected by him in his official capacity as assessor, and for all of his services as assessor he is fully compensated by way of a fixed salary, and is expressly required to pay ''all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county.''

Under the provisions of the Political Code with reference to proceedings against delinquent purchasers of state lands, the register of the state land office is required to furnish to the district attorney of each county a list of delinquent purchasers of land within his county, and, under his direction, the district attorney is to commence suit for the foreclosure of the interest

of the purchaser in such lands, and for this service it is provided: "The district attorney is entitled to receive ten dollars for each suit brought, to be taxed as costs." (Pol. Code, sec. 3553.) Fay, then district attorney of the county of Kern, brought a number of suits of this character and recovered judgments therein, and thereupon he presented a claim to the state board of examiners for the costs and expenses incurred in prosecuting said suits, including ten dollars each for his compensation. The claim so presented was allowed and paid to said Fay as such district attorney, who turned over the money so received to the county, less the amount specified as attorneys' fees, which he retained and claimed as his own, amounting in the aggregate to the sum of $630. Kern County, according to the provisions of the County Government Act, at that time belonged to the thirty-fifth class, and it was therein provided that the officers of that class should receive as compensation certain specified salaries, including the district attorney, and further declared: "The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or *ex officio* officers, their deputies and assistants." In a suit brought by the county against Fay, to recover the fees in question, it was claimed by the defendant that, as district attorney, in prosecuting the suits in question, he was not acting for the county, but his services were performed entirely for the state, and that the fees for such services came from the state, and not from the county. On appeal by the defendant from a judgment in favor of the county, it is said by this court, in affirming the judgment, with reference to the contention of the district attorney: "It would seem quite clear that under the provisions of the County Government Act of 1893 the district attorney is not permitted to retain for his own use any moneys collected by him in his official capacity, that the salary prescribed by said act is intended to compensate said officer in full for all services rendered by him." (*County of Kern* v. *Fay,* 131 Cal. 547.) The provisions of the freeholders' charter under consideration, requiring the city and county officers to pay into the county treasury all moneys received by them in their official capacity, is more explicit, if possible, than the provisions of the County Government Act in the case of district attorney Fay. It is clear that

it was intended that the salaries should be in full for all official services of every kind whatever, and that the officer is not entitled to retain to himself any fees or perquisites for the performance of official duty. Such fees or perquisites, if any received, belong to the public corporate body that employs him.

Judgment reversed and cause remanded, with directions to the trial court to enter judgment for appellant upon the stipulated facts.

Harrison, J., Temple, J., Henshaw, J., and Garoutte, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment; but I do so solely on the ground that the people of the state, by adopting amendment 8½ to the state constitution in 1896, deliberately yielded up the power to fix the proper compensation of county officers in the city and county of San Francisco. No question as to "municipal affairs" arises in the case. Under the said constitutional amendment the compensation of "county officers" may be fixed in the charter; and "compensation" is as broad a word as could be used in that connection. It might well be argued that it would be good policy for the state to encourage the collection of a tax so difficult to collect as a poll-tax, by allowing extra compensation therefor; but that matter should have been considered when the amendment 8½ was adopted.

BEATTY, C. J., dissenting.—I dissent. The poll-tax is levied and collected under laws passed in pursuance of this mandate of the constitution: "The legislature shall provide for the levy and collection of an annual poll-tax, of not less than two dollars, on every male inhabitant of this state over twenty-one and under sixty years of age, except paupers, idiots, insane persons, and Indians not taxed. Said tax shall be paid into the state school fund." (Art. XIII, sec. 12.)

The proceeds of the tax being appropriated by the constitution exclusively to the state school fund, it is not competent for the legislature to divert it from that destination and turn it, or any portion of it, over to a county or to a city and county.

In the case of *San Luis Obispo County* v. *Felts*, 104 Cal. 60, it was very seriously questioned whether the law was constitu-

tional which allowed to assessors a percentage of the tax for making the collection, but the court held, not without some hesitation, that an allowance out of the proceeds of the tax by which it was only made to pay the expenses of its own collection was not an infraction of the constitutional provision above quoted. I have never doubted the correctness of that decision, but I cannot see upon what grounds a law can be defended which assumes to turn over fifteen per cent of the poll-taxes of the city and county of San Francisco to the municipal salary fund while limiting the compensation of the assessor to a fixed salary to be paid whether he collects the tax or not. This is simply to make a donation of a portion of the fund devoted by the constitution to the support of the public schools. To allow a percentage of the tax to the agents who collect it has an evident tendency to encourage a close collection by diligent inquiry and attention. To pay a flat salary to the agents upon whom the duty of collection is devolved, and thus to make their compensation precisely the same whether the collections are many or few, is a direct inducement to forego effort and to leave the tax uncollected. It not only makes the donation of the percentage to the municipal treasury purely gratuitous, but it is unjust to residents of other parts of the state, where, under the rule laid down by the general law, a full collection of the tax is encouraged and secured by the special compensation allowed to the county assessors generally. The equal incidence of the tax is thus destroyed by a law which for that reason violates not alone the letter but the spirit and evident purpose of another constitutional provision:—

"The legislature shall not pass local or special laws in any of the following enumerated cases: . . . Tenth, for the assessment or collection of taxes." (Art. IV, sec. 25.)

The policy of the state plainly exhibited by the provisions of the Political Code and the County Government Act, is to encourage a full collection of the poll-tax—a tax enjoined by the constitution—by offering a compensation to the collector strictly proportioned to the amount collected. These are general laws for the collection of a tax, and should have a uniform operation, but if the conclusions of the court are correct they are set aside and their policy defeated by the special provisions of a local law. This is going far beyond anything hitherto claimed for municipal charters. They are, it seems, to super-

sede not only the general laws of the state, but special provisions of the constitution.

But aside from these considerations, which are not adverted to in the opinion of the court, I dissent from its conclusions upon the grounds which are there considered.

There is a conceded conflict between the provisions of the charter and the Political Code. The Political Code says to the assessor : You shall have fifteen per centum of all poll-taxes collected, as a compensation for your trouble in making the collection. The charter says: I will pay you a salary of four thousand dollars a year for making property assessments. I have no directions to give you in regard to collecting poll-taxes, but if you do collect any, you must hand over to the city and county all that the state allows you for making the collection. Which of these two conflicting laws is to govern? The answer to this question is furnished by section 6 of article XI of the constitution, which subjects all charter provisions to the control of general laws, except in municipal affairs. If, therefore, the collection of poll-taxes is not a municipal affair, the general law governs and the charter provision must give way. We have seen that the collection of the poll-tax is anything but a municipal affair. The proceeds go exclusively to the state, and as to their collection the interests of the municipality and those of the state are directly opposed. The larger the collection, the better for the state; the smaller the collection, the better for the locality. The state school fund, it is true, is reapportioned to the counties, but not in proportion to their respective contributions. The apportionment is based upon the school census, and no matter how few the poll-taxes paid by a county, her proportion of the school fund will remain just the same.

This conclusion is in no degree invalidated by the decision in *County of Kern* v. *Fay,* cited in the opinion of the court, or *Summerland* v. *Bicknell,* 111 Cal. 567, which is cited by counsel. Neither of those cases involved a conflict between a statute of the legislature, passed in the usual way, and a municipal charter. In each the only question was whether a later and more special provision of a statute superseded or repealed an earlier and more general provision of another statute, and that question was decided, upon ordinary rules of statutory construction, in favor of the later and more specific provision.

But when the conflict is between a general statute and a city charter the question is no longer one of statutory construction, but is, on the contrary, purely a question of superiority of power of legislation on the subject of the conflicting provisions. There is one legislature which passes statutes of the ordinary kind, and another legislature which adopts or ratifies charters. One is composed of the senate and assembly, acting in conjunction with the governor; the other is composed of the freeholders of the local district, whose proposed charter is subject to ratification by the two houses. Each of these legislatures is supreme within its province—the first in matters affecting the welfare of the entire state, the second in local municipal affairs. It does not by any means follow, therefore, that because a later statute repeals an earlier statute, a provision in a special charter, though of the same nature, will accomplish a similar result. If it relates to a municipal affair, it will govern, but if it goes beyond municipal affairs, it cannot affect the operation of the statute.

The concurring opinion of Justice McFarland rests altogether upon the supposed effect of section 8½ of article XI of the constitution, which empowers the freeholders of the city and county in framing their charter to *"provide for"* the compensation of county officers.

I think it is giving an unwarranted extension to the due operation of this clause to hold that the freeholders may not only fix the amount of the salary or other compensation payable out of the local treasury for official services, but may also go to the extent of defeating the general policy of the state with reference to a state affair, by depriving an agent of the state of the additional compensation payable exclusively by the state, and allowed as a special inducement to the performance of a duty in which the people of the entire state have a direct interest. No such extended operation of the clause in question is necessary to subserve municipal interests. The more restrictive operation is necessary to the protection of the general interest. We have seen that the legislature is forbidden to pass local or special laws in relation to the collection of taxes. As long as county assessors are made the agents of the state for the collection of poll-taxes in the counties generally, they must perform the same duties in cities and counties organized under freeholders' charters, and it is of vital importance to

the whole people that in this matter, so far as the performance of their duties may be incidentally affected by the mode and measure of their compensation, they should be subject to general laws, and exempt from local regulations having any tendency to defeat the policy of the general laws. The freeholders of cities and counties may "provide for" the compensation to be paid their county officers out of the local revenue, but they can and ought to do this in view of, in harmony with, and in subordination to those statutory provisions which the general policy of the state has dictated with reference to the collection of its revenues. The power of the state and the power of the freeholders may thus be exercised without conflict or interference, and the interests of each strictly conserved. If the state pays the assessor out of its own revenues something in addition to his compensation as provided for in the charter, no right or interest of the municipality is infringed, but if the municipality takes from the agent of the state the reward offered for faithful service to the state, there is a direct and mischievous infringement upon the rights of the state.

The principle which I have thus endeavored to enforce is illustrated by the decision of this court in *Ex parte Dolan*, 128 Cal. 460. There it was claimed that the city of Santa Barbara had by its charter conferred exclusive jurisdiction upon its police court in certain classes of misdemeanors which by the general law are within the jurisdiction of justices' courts. The argument in favor of the superior force of the charter provisions was pretty much the same as it is here, but it was held, upon grounds that seem incontrovertible, that the power of the freeholders to establish a police court and define its jurisdiction did not warrant the attempt to make that jurisdiction exclusive within the city limits. The statute giving the like jurisdiction to justices of the peace was held to be unaffected by the charter. And so in this case the charter should be held effective in what it gives to the county officer out of the local treasury, but wholly ineffective in what it attempts to take away from the state officer, so far as that is secured to him by a general law of the state and paid by the state.

I think the judgment of the superior court should have been affirmed.