[Sac. No. 2043.    In Bank.—March 6, 1913.]

COUNTY OF SACRAMENTO, Petitioner, v. E. F. PFUND, as County Clerk and ex officio Clerk of the Superior Court in and for the County of Sacramento, State of California, Respondent.

Public Officers—County Clerk of Sacramento County—Right to Fees for Collecting Hunting Licenses.—Under section 2 of the act to regulate and license the hunting of wild birds and animals, (Stats. 1909, p. 663), the county clerk of Sacramento County, whose term of office commenced after such act went into effect, is entitled to retain as his personal property, the ten per centum of the amount accounted for by him, payment of which had been made him by the fish and game commission out of the game preservation fund.

Id.—Increase of Official Salaries—Constitutional Limitation—Increase by Method of Fees.—As the only constitutional limitation upon the legislature in fixing the compensation of officers is a prohibition against increasing their salary or emoluments during the term for which the officers are elected (Const., art. XI, sec. 9), it is permissible for the legislature to make any such increase to apply to future terms. Such an increase may be made by the allowance of fees based upon a per centum of the amounts received for the issuance of licenses.

ID.—RIGHT TO FEES UNAFFECTED BY AMENDMENTS TO POLITICAL CODE.—
The amendments enacted subsequent to the passage of the Game
License Act to sections 4290 and 4235 of the Political Code, which
fixed the salary of such county clerk, and declared that the same
should be in full compensation for all services of every kind ren-
dered by him, made no change in the said sections as they previ-
ously stood, which could affect the right of the county clerk to retain
the fees so received by him for his services in collecting hunting
licenses.

ID.—INCREASE OF COMPENSATION AND NUMBER OF DEPUTIES OF CLERK.—
The fact that section 4235 of the Political Code was amended two
days after the approval of the Game License Act, by increasing the
compensation and number of deputies of the county clerk in the class
of counties to which Sacramento belonged, does not necessitate the
conclusion that such increase was designed to cover the added service
required in the issuance of hunting licenses.

ID.—STATUTE AMENDED IN PART—RULE OF CONSTRUCTION.—Where a sec-
tion or part of a statute is amended, the statute as a whole is not
to be considered as having been repealed and re-enacted in the
amended form; but the portions which are not altered are to be
considered as having been the law from the time when they were
enacted.

APPLICATION for a Writ of Mandate directed to the
County Clerk of Sacramento County.

The facts are stated in the opinion of the court.

Eugene S. Wachhurst, District Attorney, for Petitioner.

White, Miller & McLaughlin, for Respondent.

HENSHAW, J.—This is a proceeding in mandate to com-
pel the respondent, the county clerk of Sacramento County,
to pay into the county treasury certain fees asserted to have
been collected by him as such county clerk for services per-
formed in the issuance of hunting licenses under the act to
regulate and license the hunting of wild birds and animals.
(Stats. 1909, p. 663.)   Section 2 of that act provides as fol-
lows: "Licenses granting the privilege to hunt, pursue or kill
wild birds or animals shall be issued and delivered upon ap-
plication, by the county clerk of any of the counties of this
state, or by the state board of fish commissioners."   The
licenses shall be prepared by the fish and game commission and

furnished to the county clerk, and for the licenses furnished to and disposed of by the county clerk, "the county clerk shall be responsible and shall account for the same to the controller of the state every three months, beginning with July 1st of each year. For each license sold, registered, and accounted for by any person excepting a fish commissioner, he shall be allowed as compensation out of the game preservation fund, ten per cent of the amount accounted for." The facts, over which there is no serious controversy, are that respondent received for the issuance of these licenses the sum of $4,721. The whole of this sum he paid into the state treasury at different times, in accordance with the law, and after such payments he received from the fish and game commission the ten per centum contemplated by the statute, which moneys, aggregating $472.10, he insists upon his right to retain as his personal property. The legal question, therefore, is, whether under the law the county clerk is so entitled to retain it, and, subordinate to that inquiry—one not necessary here to determine—whether, if the county clerk is not entitled to retain it, the money belongs in the treasury of the county or of the state.

Preliminarily, it may be said that no question is here involved of an increase of salary during the term of office of an incumbent, for the term which respondent is now serving commenced nearly two years after the act of 1909 was passed.

A reading of the License Act of 1909 establishes certain facts beyond peradventure: 1. That the state of California has imposed an additional duty upon the county clerks, for the act not only authorizes them to issue the licenses, but makes it their duty so to do upon application; 2. That this duty is one to be performed, not for and on behalf of the county, but for and on behalf of the state, since it is a state license which the county clerks are authorized and directed to issue, and since by section 6 of the act all moneys collected from these licenses shall be paid into the state treasury; 3. That the authority to issue licenses is limited absolutely to the state board of fish commissioners and their deputies, and county clerks and their deputies; 4. That the state legislature set forth a succinct and clearly devised plan whereby for the issuance of such licenses "any person" other than a fish commissioner who should so issue them, was allowed "as compensation" ten per cent of the amount of the license; 5. That since the authority to issue

is by the act limited to officials only,—namely, state fish commissioners and county clerks, the phrase "any person" seems to have been used designedly, for otherwise "any official" would have been the more appropriate language; 6. That the use of the words "any person" in this connection seems clearly to indicate that the legislature designed to differentiate in the matter of the issuance of these licenses between the county clerks in their official capacity and county clerks in their private capacity; 7. That the clear purpose of this differentiation was to give expression to the legislative intent that the county clerks, as individuals, should be entitled to retain this ten per centum "as compensation"; 8. That this is made the more manifest by reason of the fact that if the county clerks are not so allowed to retain this ten per centum (since the fish commissioners are in express terms forbidden to retain it) it results in convicting the legislature of a very manifest absurdity in declaring that a particular class of officers shall be allowed to retain a commission, which very class, under other laws of the legislature's own creation, are forbidden to do this very thing.

These facts we say are irresistible from a reading of the statute itself, but, nevertheless, they are, of course, not conclusive upon the question. For it still may be that the legislature has passed a law whose intent may be plainly seen, but which intent may not be given effect because of the prohibition of the constitution, or of other controlling statutes. Such, it is contended, is the case here. This inhibition upon the county clerk's right to retain these fees, it is said, is found in the language of sections 4235 and 4290 of the Political Code. The first of these sections fixes the salary of the county clerk of Sacramento County. The second declares that "the salaries and fees provided in this title shall be in full compensation for all services of every kind and description rendered by the officers named in this title, either as officers or *ex officio* officers, their deputies and assistants, unless in this title otherwise provided." But these two sections, in so far as they have any bearing upon the present consideration, are precisely the same now as they were when the Game License Act was adopted, and as the only constitutional limitation upon the legislature in fixing the compensation of officers is a prohibition against increasing their salary or emoluments during the term for which the officers are elected (Const., art. XI, sec. 9),

it follows that it was permissible for the legislature to make any such increase to apply to future terms. As has been said, such is the situation here presented. Thus, for the additional duties imposed upon county clerks, no one would question the right of the legislature to say that their salaries should be increased in a fixed sum, and no objection attaches to the method of compensation by fees based upon a per centum of the amounts received for the issued licenses.

Were this all of the question, there could be but one conclusion drawn, and that in favor of the respondent's right to the retention of the money. But it is said that sections 4235 and 4290, being amended in certain particulars, were entirely re-enacted by the legislature of 1911, [Stats. 1911, pp. 134, 251], and that such re-enactment should be held, to be the latest expression of the legislative view, and thus to forbid the retention of the moneys. But it is conceded that the amendments, touching the matter under consideration, made absolutely no change in the sections of the code as they previously stood. In other words, the provisions of the law, so far as section 4290 is concerned, are identical, and so far as section 4235, they were not changed in any material respect by the amendment of 1911. But it is argued that section 4235 was amended two days after the approval of the Game License Act, by increasing the compensation and number of deputies of the county clerks in the class of counties to which Sacramento belonged, and that it must be concluded from this that this increase was designed to cover the added service required in the issuance of hunting licenses. We cannot, however, concur with this reasoning. Section 4235 merely fixes the compensation and leaves section 4290 to declare what additional compensation may be received and what is forbidden. . Moreover, so to find an inhibition by implication, and so to construe a statute amended in certain particulars as having been wholly re-enacted as of the date of the amendment, is to do violence to the code and all canons of construction. The code itself (Pol. Code, sec. 325) declares: "Where a section or part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form; but the portions which are not altered are to be considered as having been the law from the time when they were enacted." For the interpretation of this section, as well as for the general rules

of construction, it is sufficient to cite: *Central Pac. R. R. Co.*
v. *Shackelford,* 63 Cal. 265; *Swamp Land etc.* v. *Glide,* 112
Cal. 90, [44 Pac. 451]; *People* v. *Sutter St. Ry.,* 117 Cal. 604,
[49 Pac. 736].

The application for mandate is therefore denied.

Melvin, J., Shaw, J., Sloss, J., and Angellotti, J., concurred.

Rehearing denied.