FREEHOLDERS OF PASSAIC v. JOHN J. SLATER.

Submitted December 8, 1913—Decided March 2, 1914.

Fees of county clerks in naturalization cases are received and collected for the use of the county as public money belonging to the county by virtue of the act of 1906. *Comp. Stat., p.* 4643, *pl.* 38.

On appeal from the Supreme Court.

For the plaintiff-appellant, *Jacob Willard De Yoe.*

For the defendant-respondent, *William I. Lewis.*

The opinion of the court was delivered by

SWAYZE, J.   This action was brought by the freeholders of Passaic against the county clerk to recover fees received by him in naturalization cases under the act of congress. The county claims them under the act of 1906. *Comp. Stat., p.* 4643. The construction of both statutes is involved. As far as concerns the act of congress, the case is controlled by a recent decision of the United States Supreme Court. Mulcreevy *v.* San Francisco, decided January 5th, 1914. This decision, however, does not control the construction of our state statute. That is for us to settle. The act of congress does not attempt to compel the state courts in naturalization cases to exercise the jurisdiction which it permits. The very interesting and important question therefore which has been left undecided by the United States Supreme Court (*Prigg* v. *Pennsylvania,* 16 *Pet.* 539; *Robertson* v. *Baldwin,* 165 *U. S.* 275), whether state officers can be compelled by act of congress to act in their official capacity is not now before us. The case is in the same situation as that of *Alexander Stephens, Petitioner,* 4 *Gray* 559; *Rushworth* v. *Judges of Hudson Pleas,* 29 *Vroom* 97; *In re Gilroy,* 88 *Me.* 199. In all these cases the right of the state to confine the jurisdiction permitted by the act of congress to such of the state

courts as the state legislature might select was sustained. Those cases arose indeed under a different act of congress, but the new act of 1906 is no more compulsory upon the state tribunals than the former.    The right of the state to limit the exercise of the jurisdiction involves the right to select the court which may act or to forbid any to act.    This is a right most important for the state if it is to preserve its own sovereignty and prevent the regular work of courts created by the state and sustained at its expense from being hampered by duties imposed upon them by an independent sovereignty.    The reasons are sufficiently stated by Mr. Justice Van Syckel in the case above cited.    We need only suggest, in addition, the embarrassment to the administration of justice in New Jersey if petitioners should insist on their applications to be naturalized being heard before this court, as the act of congress would permit.. Congress recognized the difficulty, and by failing to make action by the state courts compulsory, necessarily left those courts and their officers to the control of such regulations as the legislature might make. These considerations do away with the argument that congress alone has the right to control the compensation of the clerks in order to secure efficient service; for congress has left it to the states to say whether the clerks shall serve the federal government at all.    When, therefore, the act of congress authorized the clerks to retain half of the fees, it left it to the state to say whether they should be retained to his own use or should be subject to the mandates of the state legislature.    To this the clerks can have no valid objection.    Since the state can forbid its officers to act in naturalization cases and has in fact by the act of 1895 (*Comp. Stat., p.* 3688) forbidden all but officers of the Supreme Court and Court of Common Pleas, it can impose such terms on their action as it chooses.    It is not, as the Supreme Court of Massachusetts (*Inhabitants of Hampden County* v. *Morris,* 207 *Mass.* 167) argues, a case where the state has elected to exercise jurisdiction under a federal statute, but a case where congress has availed itself of an already existing state agency. If priority of time is important in determining between these

two alternatives, our act of 1895 antedates the federal act of 1906. But the true test is which sovereignty controls the conduct of the officers and courts. In the absence certainly and perhaps even in the presence of a compulsory provision of the federal statute, the controlling sovereignty must be the sovereignty that creates the courts and commissions their officers. For this reason we think it is the federal government that has availed itself of the agency of the state courts. This conclusion meets the suggestion that it is as much against public policy to allow the state to interfere with the compensation of federal officers as it would be to allow officers to assign their salaries in advance. The answer is that the clerks in naturalization cases are not federal but state officers, and that when congress passed the Naturalization act of 1906 the state had already passed the Salary act of the same year. Congress adopted the agency with all the restrictions the state had put upon it. This view is in accord with the ruling of the United States Circuit Court in New York. *United States* v. *Severino,* 125 *Fed. Rep.* 949.

We have to deal then only with the proper construction of the act of our own legislature. The question is what limitation has it imposed. The act (*Comp. Stat., p.* 4643) provides that costs, allowances, percentages and all other perquisites of whatsoever kind which by law the county clerk may receive for any official acts or services rendered by him or his assistants shall be received by him for the sole use of the county and accounted for and paid over. Two questions arise—*first,* Are these fees received by law? *second,* Are they for official acts or services? We think both questions must be answered in the affirmative, notwithstanding the contrariety of opinions and decisions adverse to our view by courts for which we entertain the highest respect. We have heretofore dealt with a similar question. *Freeholders of Hudson* v. *Kaiser,* 46 *Vroom* 9 ; *S. C.,* 47 *Id.* 829. The fees are received by law both of the federal government and the state government. The amount is fixed by the act of congress; the right to receive them comes from the act of our state legislature of 1895; but for the latter act the fees might go

to the clerk of this court or the clerk in chancery. The fees are for official services since all the proceedings in which they are earned are proceedings in court, and the clerk receives them not in his individual capacity but as clerk of the court.

It is true that they are not received for services which the state alone could impose upon the clerk; nor has the act of congress alone imposed them; both acts were necessary, but since it was left open to the state to say to the clerk, "account for these fees to your county or never more be officer of mine," we think it may fairly be said that the clerk receives them as a state officer by legislative permission. This suffices to make them official fees within the meaning of the act. We are confirmed in this conclusion by the history and reason of the legislation. It grew out of the conclusion of the legislature that it was wiser to pay county officers by salaries, and to have all fees turned into the county treasury. With this end in view section 4 of the act provides for a salary in lieu of "all other compensation," and for the payment of their assistants by the county disbursing officers. Under the circumstances it was most reasonable to require the officials to account for fees received by them in naturalization cases; those cases occupied the time the courts were in session which the county clerk or his deputy was obliged to attend as clerk; the time taken was time that belonged to the county; the additional work was likely to make necessary additional expenditure for assistants in most counties, perhaps in all, and thus increased county expenses; the county was therefore fairly entitled to the fees.

The judgment is reversed to the end that a *venire de novo* be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.    12.