[Civ. Nos. 1931 and 1932.  First Appellate District.—November 22, 1916.]

## COUNTY OF ALAMEDA, Respondent, v. JOHN P. COOK et al., Appellants.

PUBLIC OFFICERS—COUNTY CLERK OF ALAMEDA COUNTY—RIGHT TO FEES IN NATURALIZATION PROCEEDINGS.—The county clerk of the county of Alameda is not entitled, as a matter of law, to retain for his own use and benefit one-half of the fees collected by him in naturalization proceedings, under the act of Congress which provides that the clerk of any court collecting such fees is authorized to retain one-half thereof, and to pay the other one-half to the federal bureau of immigration and naturalization.

ID.—DISPOSITION OF FEES "ALLOWED BY LAW"—REQUIREMENTS OF STATUTES.—The statute law of this state prescribes the duties of county clerks, provides for their compensation, and directs such officials to pay into the county treasury all fees "allowed by law"; and fees received in naturalization proceedings come within such term.

ID.—FEDERAL AND STATE STATUTES NOT IN CONFLICT.—The act of Congress does not purport to deal or interfere with the relation of the state and its officers, and the disposition of fees collected under such act after an accounting to the federal government for its proportion thereof, may very properly be covered and controlled by the law of the state without necessarily creating any antagonism between the state and its officers, or conflict between the federal and state statutes.

ID.—PAYMENT OF NATURALIZATION FEES INTO TREASURY—CODE AMENDMENT CONCERNING CLERK OF CERTAIN COUNTIES—CLERKS OF OTHER COUNTIES NOT ENTITLED TO RETAIN.—The circumstance that section 4233 of the Political Code, which fixes the compensation of county officers of counties of the fourth class, at one time declared that the county clerk of counties of that class must pay into the county treasury all fees received by him in his official capacity from whatever source derived, and that such section was amended in 1911 to read "including fees allowed by the government of the United States of America in all matters pertaining to the naturalization of aliens," was not an expression of the legislative will that the county clerk of every other county in the state might retain fees collected in naturalization proceedings for his own personal use and benefit.

APPEAL from a judgment of the Superior Court of Alameda County.  William H. Waste, Judge.

The facts are stated in the opinion of the court.

Reed, Black, Nusbaumer & Bingaman, for Appellants.

W. H. L. Hynes, District Attorney, Walter J. Burpee, Assistant Deputy District Attorney, and T. P. Wittschen, Deputy District Attorney, for Respondent.

Leon Moss, and F. A. Stephenson, as *Amici Curiae.*

LENNON, P. J.—These are appeals from judgments rendered in favor of the plaintiffs upon the defendants' default in answering after their demurrers to the plaintiffs' complaints had been disallowed, in two actions wherein the plaintiff prayed for judgment against the defendant Cook for the recovery of certain sums of money aggregating $5,854.50, collected by him as fees during his incumbency of the office of county clerk of the county of Alameda, and against the corporation defendant, as surety upon his official bond. One action was for the recovery of that part of the aggregate amount collected by said Cook during the years 1907 to 1911, and the other action was for the recovery of the balance of said aggregate sum collected by him during his term of office commencing in the year 1911. Both cases being between the same parties and involving identical questions of law and fact, the appeals were presented and argued together, and will therefore be discussed and decided as one.

The sums of money in suit were alleged to have been collected by the defendant Cook as county clerk of Alameda County, under an act of Congress which provided that the clerk of any court collecting such fees was authorized to retain one-half thereof, and that the remaining one-half should be accounted for quarterly to the federal bureau of immigration and naturalization (34 Stats. at Large, 596, c. 3592, [Fed. Stats. Ann. (1909 Supp.), p. 365; U. S. Comp. Stats. Supp. 1911, p. 24]). It is conceded that the corporation defendant is liable upon its bond if it be held that the complaint states a cause of action against the defendant Cook; but it is the latter's contention that he was entitled, as a matter of law, to retain for his own use and benefit one-half of the fees provided for by the federal statute in question and which he collected under and by virtue of that statute in his official capacity as county clerk.

We are satisfied that this contention cannot be sustained. A similar contention was made in the case of *City and County of San Francisco* v. *Mulcrevy*, 15 Cal. App. 11, [113 Pac. 339] ; and in that case this court held that although the federal naturalization act authorized Mulcrevy as county clerk to retain, as against the government of the United States, one-half of the fees which he had received for services rendered in naturalization proceedings, the disposition of such fees did not concern the federal government, and that inasmuch as they were paid to and collected by Mulcrevy in his official capacity, he was compelled to account for and pay the same into the treasury of the city and county of San Francisco pursuant to certain charter provisions under which he held and conducted his office, which provided that the salary allowed and paid to him should be in full compensation for all services rendered, and that he should pay into the city and county treasury all moneys coming into his hands as county clerk no matter from what source derived or received.

The supreme court of the United States, where the Mulcrevy case ultimately went upon a writ of error, after a denial of a rehearing by the state supreme court, not only affirmed the judgment of this court, but incidentally answered the question now raised here adversely to the contention of the defendants, viz., that any construction of the federal statute denying to the county clerk the right to retain to his own use one-half of the fees collected by him, had no tendency to create antagonism between the state and its officers, and would not result in a conflict of law and authority between the state and the federal governments. In the course of its opinion the court in effect said that the federal statute did not purport to deal or interfere with the relation of the state and its officers, and that the disposition of fees collected under a federal statute by a state officer, after an accounting to the federal government for its proportion thereof, might very properly be covered and controlled by the law of the state without necessarily creating any antagonism between the state and its officers, nor any conflict between the federal and state statutes.

We are unable to perceive, as counsel for the defendants would have us do, any material distinction between the scope and effect of the charter provisions of San Francisco upon a construction of which rested the decision originally

and finally rendered in the Mulcrevy case, and the provisions of the statute law of the state which the plaintiff claims, and the court below held, compelled the defendant here to account for and pay into the county treasury of Alameda County the fees collected for services rendered by him, in his official capacity as county clerk, to the federal government in naturalization proceedings. While it is true that the decision in the Mulcrevy case both by the supreme court of the United States and this court rested largely, and probably entirely, upon a consideration and construction of the particular provisions of the San Francisco charter, which prescribed that Mulcrevy's salary should be in full for all services rendered by him, and required him as county clerk to pay into the county treasury all moneys coming into his hands as such officer, "no matter from what source derived or received," nevertheless the phrasing and purpose of those charter provisions were not in our judgment in effect peculiar to the municipal government of San Francisco, for analogous provisions are to be found in the statute law of the state prescribing the duties of county clerks throughout the state, providing for their compensation, and directing the disposition of fees collected by them in their official capacity. Those statutory provisions, it is conceded, were in operation either as a part of the former County Government Act, or as sections of the Political Code, at the time the defendant Cook received and retained the fees in suit. Thus, the statute provided that the defendant as county clerk of Alameda County was ex-officio clerk of the superior court of that county, and was required to perform the duties imposed upon him by law (Pol. Code, sec. 4152), and his salary as such county clerk and ex-officio clerk of the superior court was fixed at four thousand dollars per annum (Pol. Code, sec. 4232), which was to be "in full compensation for all services of every kind and description" rendered by him either as county clerk or ex-officio clerk of the superior court (Pol. Code, sec. 4290); and as such clerk he was required to charge and collect for the use of his county, and "pay into the county treasury, on the first Monday in each month, the fees now or hereafter allowed by law in all cases, except where such fees, or a percentage thereof," were allowed to him or were made a charge against the county. (Pol. Code, sec. 4292.) While these statutory provisions do not in so many words, as did the charter pro-

visions involved in the Mulcrevy case, direct that all fees "no matter from what source derived or received," should be paid into the county treasury, nevertheless they did direct the defendant to collect and pay into the county treasury all fees "allowed by law," and this direction, we take it, is broad enough in its scope and effect to cover and control the disposition of all fees received by the defendant Cook in his official capacity regardless of the source from which they were derived.

That the fees received by county clerks under the federal statute in naturalization proceedings come within the category of fees "allowed by law," was definitely declared in the case of *Freeholders etc.* v. *Slater*, 85 N. J. L. 621, [90 Atl. 377], decided subsequent to the decision of the supreme court of the United States in the Mulcrevy case, where it was held that inasmuch as the county clerk received such fees for services rendered in his official capacity as clerk of the court in which naturalization proceedings were had, he was required to pay them into the county treasury under a statute which provided "that costs, allowances, percentages, and other perquisites of whatsoever kind which by law the county clerk may receive for any official acts or services rendered by him or his assistants, shall be for the sole use of the county. . . . "

We are not unmindful of the several cases from other jurisdictions holding, in effect, that when rendering services in naturalization proceedings the county clerk is acting as the agent of the United States separate and apart from and without regard to his official relations to the state, and that, therefore, the disposition of the fees charged and collected under the federal statute in naturalization proceedings was no concern of the state. These cases, however, were all decided previous to the rendition of the opinion of the supreme court of the United States in the Mulcrevy case, and therefore their effect as authorities upon the question presented here has been seriously impaired if not destroyed.

The circumstance that section 4233 of the Political Code, which fixes the compensation of county officers of counties of the fourth class (Santa Clara), at one time declared that the county clerk of counties of that class must pay into the county treasury all fees received by him in his official capacity from whatever source derived, and that such section was amended in 1911 (Stats. 1911, p. 1282) to read, "including

fees allowed by the government of the United States of America in all matters pertaining to the naturalization of aliens,'' was not an expression of the legislative will that the county clerk of every other county in the state might retain fees collected in naturalization proceedings for his own personal use and benefit. The amendment to the section in question, although more precisely expressing the legislative will and intent as to the disposition of fees received in naturalization proceedings, did not as a matter of law add anything to the meaning of the section as originally enacted, nor consequently by inference restrict the scope of the statutory provisions relating to county clerks throughout the state couched in the same general language as that relating to the county clerk of Santa Clara before its amendment.

The two cases of *Alameda County* v. *Dalton,* 148 Cal. 246, [82 Pac. 1050], and *Sacramento County* v. *Pfund,* 165 Cal. 84, [130 Pac. 1041], have no application to the facts of the present case. In the former it was the claim of Dalton that he, as the county assessor, was entitled to retain to his own use a certain percentage of the amount of poll taxes collected yearly by him under the terms of a statute which plainly provided that he was ''to retain for his own use'' the percentage in controversy, but which was in irreconcilable conflict with an earlier statute which expressly provided that he should not receive any compensation for his services in collecting poll taxes. The supreme court decided that the latter statute prevailed, and that it expressly justified the retention by Dalton for his own personal use of fifteen per cent of the poll taxes collected by him for the state.

The case of *Sacramento County* v. *Pfund* involved the right of the county clerk of that county to retain to his own use a certain percentage of hunting licenses sold by him under the hunting license act, which provided that ''for each license sold, registered and accounted for by any person excepting by a fish commissioner, he shall be allowed as compensation out of the game preservation fund, ten per cent of the amount accounted for (Stats. 1909, p. 663). Construing this act the supreme court held that the phrase ''any person'' was designedly employed therein to differentiate the service of selling licenses from the duties ordinarily required of the county clerk in his official capacity, that is to say, that the selling of licenses was purely a personal service rendered by the clerk

as an individual; and that such differentiation indicated with sufficient certainty the legislative intent to confer upon the county clerk the right to retain for his own use the percentage provided for by the statute.

Clearly the cases immediately under discussion are not in conflict with the Mulcrevy case, and do not tend in any degree to support the claim of the defendant that he was entitled to retain the fees in controversy here for his personal use, if we are correct in our previously expressed interpretation of the intent and purpose of the provisions of section 216 of the County Government Act which were in force during the first term of the defendant Cook as county clerk, and continued in force during his second term in the form of section 4292 of the Political Code, and which required county officers to account for "the fees now or hereafter allowed by law except where such fees or a percentage thereof is allowed such officers. . . . "

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 19, 1917.