[S. F. No. 16274.   In Bank.—December 15, 1939.]

H. W. REGAN et al., Appellants, v. THE COUNTY OF SAN MATEO et al., Respondents.

Carl W. Anderson and Charles N. Kirkbride for Appellants.

Gilbert D. Ferrell, District Attorney, and Daniel E. Sullivan, Assistant District Attorney, for Respondents.

CARTER, J.—This is an appeal by plaintiffs from a judgment rendered against them by the Superior Court of San Mateo County denying recovery in an action brought against said county and its board of supervisors for certain commissions on inheritance and transfer taxes collected by their assignor, Harry E. Jenkins, as treasurer of said county between August 14, 1931, and January 7, 1935.

The facts of this case are undisputed and are substantially as follows:

At the general election in 1930, Harry E. Jenkins was elected county treasurer of San Mateo County for a full four-year term. He took office as such county treasurer on January 5, 1931. At the time of his election, San Mateo County was a county of the twenty-first class and the compensation of the county treasurer was an annual salary of $3,500 (Pol. Code, sec. 4250) and a commission on all inheritance and transfer taxes collected by him. (Stats. 1921, p. 1500, as amended by Stats. 1927, p. 1094.)

At the session of the legislature in 1931, the classification of San Mateo County was changed from the twenty-first to the fifteenth class. (Pol. Code, secs. 4005c, 4006.) At said session, the County Government Act of said county was amended by providing for an increase in the compensation of several of the officials of said county. (Pol. Code, sec. 4244.) Subdivision 5 of said section provided that "The County Treasurer shall receive $3,900.00 per annum"; and subdivision 17 of said section provided in part as follows:

"Provided, that the salaries and compensation, as herein provided for, shall be in full for all compensation to said officials, their deputies, employees or appointees.

"All fees, perquisites, commissions, and other moneys received by any county official, his deputy, employee or appointee, by virtue of the office or employment of such county

officer, deputy or employee, shall each month be paid into the county treasury, and shall belong to the county; . . . '' (Chap. 551, Stats. 1931.) This statute became effective August 14, 1931. (Pol. Code, sec. 323.)

Jenkins served his full term as county treasurer and was paid the salary of $3,500 per annum provided for at the time he took office. He also received the commissions provided for by section 20 of the Inheritance Tax Act above mentioned until August 14, 1931. Thereafter he paid said commissions into the county treasury and did not withdraw any portion thereof for his own use. He assigned all of his claim to said commissions to plaintiffs who brought this action against San Mateo County and its supervisors to recover said commissions.

The record discloses that between August 14, 1931, and January 7, 1935, Jenkins collected as commissions authorized by section 20 of the Inheritance Tax Act and paid into the treasury of San Mateo County the sum of $4,573.85; none of which sum was withdrawn by him. The trial court rendered judgment in favor of defendants denying plaintiffs' recovery.

The question presented by this appeal is whether or not the amendment covered by subdivision 17 of section 4244 of the Political Code became effective during the term for which Jenkins was elected county treasurer of San Mateo County at the general election in 1930, so as to deprive him of his right to the commissions authorized by section 20 of the Inheritance Tax Act, which accrued between August 14, 1931, and January 7, 1935.

On July 1, 1933, the San Mateo County charter became effective. Section 5, article XIII provides:

''Compensation in full for services. The compensation provided to be paid to all elective and appointive county and township officers, boards and commissions shall, when so paid, be in full for all services rendered.''

Section 13, article VI of the charter provides:

''Payment of fees into the county treasury. Every county officer, board or commission, authorized to collect fees or monies must pay into the county treasury all such fees and monies collected by him or them, as the case may be, not later than the next business day following their receipt. . . . ''

However, the charter becomes unimportant in determining the problem before us in view of the following provision of section 12, article VI, thereof:

"All county officers who, immediately prior to the time this charter goes into effect are holding elective offices shall, during the remainder of their respective terms of office, have and receive the same salary and compensation to which they, severally, are now entitled to receive under provisions of general law, anything herein stated to the contrary notwithstanding."

Neither the amendment to the San Mateo County Government Act of 1931 nor the county charter stated that a decrease in compensation for the county treasurer was intended, or that the change in compensation was intended to affect incumbents. Section 20 of the Inheritance Tax Act, under which the commissions in question were collected, was not repealed or amended, and the commissions provided for therein continued to be collected by Jenkins during his term as such county treasurer, but after August 14, 1931, were paid into the county treasury by him.

It is obvious that the 1931 amendment to the San Mateo County Government Act fixing the salary of the county treasurer at $3,900 per year without a finding by the legislature that the increased salary was intended to offset the commissions on inheritance taxes, constituted an increase in the compensation of the county treasurer and could not become effective during the term for which Jenkins was elected. (Art. XI, sec. 9, Cal. Const.; *Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199]; *Galeener* v. *Honeycutt,* 173 Cal. 100 [159 Pac. 595]; *Keith* v. *Ramsey,* 34 Cal. App. 340 [167 Pac. 408]; *Applestill* v. *Gary,* 18 Cal. App. 385 [123 Pac. 228]; *Williams* v. *Garey,* 19 Cal. App. 769 [127 Pac. 824].) It appears to be well settled by the above-mentioned authorities that when the legislature amends a County Government Act by providing an increase or reduction in salary for certain county officials, or changing the method of compensating certain county officials from a fee to a salary basis, or *vice versa,* and the act creating such amendment contains no provision to the effect that it is intended to affect incumbents, it will be presumed that the legislature intended that such amendment should not take effect until the expiration of the term of office of the incumbent thus affected and that the

incumbent should continue to be compensated in accordance with the law in effect at the time he took office.     ▮     The rule laid down in the above-mentioned cases appears to be clearly applicable to the facts of the case now before us. We can perceive no good reason why a different rule should be applied to this case simply because the law in force at the time Jenkins was elected provided that he should receive a portion of his compensation by way of a fixed salary of $3,500 per year, and a portion by way of commissions derived from the inheritance taxes collected by him. Let us assume a situation where the major portion of the compensation of a county official would be paid to him in the way of fees or commissions and only a small part in salary; for instance, if a county official were allowed a salary of $600 a year and fees or commissions which would average $3,000 a year, making the total amount of his compensation $3,600 a year, and the legislature should amend the County Government Act so as to increase his salary to $3,600 a year and provide that all fees and commissions collected by him be paid into the county treasury, and no finding was made by the legislature that the change would not effect an increase or reduction in the compensation of the official and no provision was made therein for the amendment taking effect during the term of the incumbent, the rule contended for by respondents in the instant case would have the effect of depriving the official of his right to fees and commissions during his term and prohibit him from accepting the increased salary, hence he would be required to serve out the remainder of his term at a salary of only $600 per annum, or resign.

The foregoing illustration demonstrates the wisdom of the rule of construction enunciated in the above-mentioned cases, which has the effect of protecting both the public officials and the political subdivision which they have been chosen to serve.

This rule of construction is clearly stated in the decision of this court in the case of *Smith* v. *Mathews, supra,* which we quote as follows:

At page 759: " . . . the question which we have to decide is the proper construction of an act which, without repealing the County Government Act, merely amends it by increasing the salaries of certain officers, and by changing the compensation of other officers from fees to salary, or from salary

to fees, in such a manner as to leave the courts no means of determining whether these amendments will operate an increase or reduction of compensation. The true construction of such an act, in my opinion, is to treat all its provisions alike, and, knowing that such of them as increase salaries could have been intended to apply only to officers elected subsequent to the amendment, to conclude, in the absence of express and specific declaration to the contrary, that other amendments which may or may not have the effect of increasing compensation were likewise intended to operate only in favor of or against officers to be thereafter elected.''

And we quote with approval from the concurring opinion of Mr. Justice Shaw in the Smith case at page 760 as follows:

''The point upon which the case is now decided is that the provisions of the Act of 1907, in so far as they operate to increase the compensation of officers for terms running at the time the Act took effect, are not to be given a retroactive operation, that is, that those provisions do not apply to the compensation for the then existing terms, and that in those cases where the Act makes a change in the mode of measuring the compensation, from fees to salaries, and where, consequently, it cannot be ascertained in advance that there is no increase, it is to be presumed from this uncertainty and the absence of an express statement otherwise, that the Legislature intended thereby to provide only for officers to be elected for subsequent terms.''

And at page 761:

''The Constitution forbids a legislative increase in the compensation of any county or township officer during his term of office. (Art. XI, sec. 9.) This prohibition, in effect, and with regard to legislation on the subject, makes the entire term of an office, with the concurrent right of the incumbent to compensation, a matter which occurs and a right which exists as soon as the term begins, and which are thereafter, in that aspect, past transactions. *Any legislation affecting the compensation of such officer is to be deemed as operating upon an existing right, and the legislature will not be presumed to have attempted to change the compensation during the term, unless it expressly so declares.* If such intent does not appear, the law will be construed as intended to apply only to officers elected for subsequent terms. This construc-

tion is just both to the officer and to the public. *If it intends to reduce the compensation of officers* in any class of counties, during the pending terms, as it may constitutionally do, *the legislature can say in plain words that the change applies to present incumbents.* If it changes from fees to salaries, as it may if it finds that the salary allowed will not increase the compensation, *it can declare that there is no increase and that it is to apply immediately to the present incumbents.* Perhaps the fact of no increase would be inferred from the declaration that it should apply to present incumbents; *but where neither statement appears, it is to be inferred that an increase was contemplated and that it was intended to apply prospectively only."* (Italics ours.)

The case of *Applestill* v. *Gary, supra,* involved a change of sheriff's compensation from a $5,000 annual salary plus mileage fees to a $5,000 annual salary plus fees and mileage for service outside his county plus an annual salary of $1500 for an under sheriff and an annual salary of $900 for a court deputy. The court followed the reasoning in the Smith case and held that the change in compensation could not be applied to the incumbent.

In support of the judgment of the trial court in the case at bar, counsel for respondents rely upon the following cases: *County of Kern* v. *Fay,* 131 Cal. 547 [63 Pac. 857], *County of San Diego* v. *Schwartz,* 145 Cal. 49 [78 Pac. 231], *Lesem* v. *Getty,* 23 Cal. App. (2d) 57 [72 Pac. (2d) 183], *Dodge* v. *City and County of San Francisco,* 135 Cal. 512 [67 Pac. 973], *San Francisco* v. *Mulcrevy,* 15 Cal. App. 11 [113 Pac. 339], *Mulcrevy* v. *San Francisco,* 231 U. S. 669 [34 Sup. Ct. 260, 58 L. Ed. 425], *County of Alameda* v. *Cook,* 32 Cal. App. 165 [162 Pac. 405], *County of Los Angeles* v. *Cline,* 37 Cal. App. 607 [174 Pac. 73], *Winter* v. *DeShields,* 46 Cal. App. 574 [189 Pac. 703], *County of Tehama* v. *Winter,* 56 Cal. App. 341 [205 Pac. 97], and *Jones* v. *DeShields,* 187 Cal. 331 [202 Pac. 137].

None of these cases involve the problem here under consideration as the statute or charter provision there under consideration was adopted prior to the election and taking of office of the officer concerned.

In the case at bar it cannot be denied that the treasurer's compensation was changed by the 1931 amendment from

salary plus commission to an increased salary alone. Under the Smith case this change constituted an increase. In view of this fact, it was constitutionally impossible for this increase to affect the incumbent county treasurer during the balance of his elective term.

The record in this case discloses that upon the expiration of Jenkins' term as county treasurer on January 7, 1935, he continued to fill the position of county treasurer of San Mateo County under an appointment from the board of supervisors of said county until October 28, 1935, and the present action was commenced to recover all commissions on inheritance and transfer taxes collected by him between the 14th day of August, 1931, and the 28th day of October, 1935. However, appellants have expressly waived all claim to such commissions collected by Jenkins during his appointive term subsequent to January 7, 1935, and we have therefore not given consideration to the question of whether or not appellants are entitled to recover such commissions during said last-mentioned period.

We think it is clear that in the absence of a declaration in the 1931 amendment to the San Mateo County Government Act, that it was intended to affect incumbents, there is no escape from the conclusion that Jenkins was entitled to collect and retain as his own, the commissions on inheritance and transfer taxes collected by him between August 14, 1931, and January 7, 1935, pursuant to section 20 of the Inheritance Tax Act (Stats. 1921, p. 1500, as amended by Stats. 1927, p. 1094), and, therefore, the judgment is reversed with directions to the trial court to enter judgment in favor of plaintiffs for the amount of commissions to which Jenkins was entitled pursuant to said act between August 14, 1931, and January 7, 1935, the date of the expiration of his term as such county treasurer for which he was elected in the year 1930.

Shenk, J., Gibson, J., Curtis, J., Edmonds, J., and Waste, C. J., concurred.

HOUSER, J., Dissenting.—I dissent.

In this case, a judgment that was rendered by the superior court was affirmed on appeal to the District Court of Appeal. (*Regan* v. *County of San Mateo*, (Cal. App.) [90 Pac. (2d)

366].) Although, thereafter, a petition for hearing by this court was granted, on further consideration of the appeal, I find that I am in accord with the opinion which was prepared by Mr. Justice Ward of the First District Court of Appeal, and believe that it should meet with the approval of this court, and consequently that it should be adopted as its opinion. It is as follows:

"This is an appeal by the assignees of Harry E. Jenkins, formerly treasurer of the county of San Mateo, from an adverse judgment in an action against the county for inheritance and transfer tax commissions.

"Harry E. Jenkins was the duly elected, qualified and acting treasurer of San Mateo county from January 5, 1931, until January 7, 1935. Thereafter, under the provisions of a county charter which had in the meantime become effective, for the appointment of a treasurer, he was selected, duly appointed and served in that capacity until October 28, 1935. From the date of his election until August 14, 1931, Jenkins, as treasurer, collected and retained certain commissions on inheritance and transfer taxes to which he was entitled under the provisions of section 4290 of the Political Code. On this last-mentioned date there became effective the County Government Act. (Stats. 1931, p. 1168.) Section 17 of this act (page 1174) provided that all fees, perquisites, commissions and other moneys received by any county official, excepting the coroner, public administrator and certain county clerk registration deputies, should be paid into the county treasury and belong to the county. This provision is explicit. It prohibits the retention by any county officer of commissions, fees, perquisites or any other moneys received by any officials other than those specifically excepted. In the same year the county of San Mateo was raised from the twenty-first to the fifteenth class (secs. 4005c and 4006, Pol. Code) and the salaries of certain county officers were raised, including that of the county treasurer, but the act provided that the salaries 'shall be in full for all compensation to said officials'. (Stats. 1931, p. 1168, at pp. 1170 and 1174.) The salary was, therefore, the only compensation the treasurer could accept for his official service. (*County of Kern* v. *Fay,* 131 Cal. 547 [63 Pac. 857]; *County of San Diego* v. *Schwartz,* 145 Cal. 49 [78 Pac. 231].)

"Appellants contend that the change in the classification of the county did not confer upon the treasurer the benefit of the increased salary during his unexpired term (art. XI, sec. 9, Const. of Cal.; *Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199]), and that his salary for that period remaining the same he was officiating under the previous statute (Pol. Code, sec. 4250); that the Inheritance Tax Act (Stats. 1921, as amended) permitted the collection of inheritance tax commissions and that therefore the privilege of collecting them could not be affected before the end of his elective term. The right or privilege to the commissions was entirely independent of the statute fixing the salary of the county treasurer. The legislature had the power to bestow this perquisite and by the same token the right to take it away.

"On July 1, 1933, the new charter of San Mateo county became effective. Section 13 of article VI of the charter (Stats. 1933, p. 2967) provides that a county officer authorized to collect fees or moneys must on the next business day pay into the county treasury the receipts so collected. The charter relative to the salaries of certain county officers, etc., superseded the statute, but the right to retain the commissions here in question had already been abrogated. The county charter did not countenance the retention of the inheritance tax commissions during the elective or appointive terms of the treasurer.

"Appellants contend that the charter does not prohibit the retention of inheritance tax commissions by *ex-officio* officers. Section 5 of article XIII (Stats. 1933, p. 2976) provides that the compensation paid to elective and appointive officers shall be in full for all services rendered. A county charter provision dealing with matters of compensation controls over a general law. Section 13 of article VI (Stats. 1933, p. 2967) applies to 'every county officer'. (*Lesem* v. *Getty,* 23 Cal. App. (2d) 57 [72 Pac. (2d) 183]; *Dodge* v. *City and County of San Francisco,* 135 Cal. 512 [67 Pac. 973]; *San Francisco* v. *Mulcrevy,* 15 Cal. App. 11 [113 Pac. 339]; *Mulcrevy* v. *San Francisco,* 231 U. S. 669 [34 Sup. Ct. 260, 58 L. Ed. 425]; *County of Alameda* v. *Cook,* 32 Cal. App. 165 [162 Pac. 405].) If the freeholders in framing the San Mateo county charter desired that its officers, *ex officio* or otherwise, should pay to the county all the perqui-

sites over the salaries fixed in the charter, they had a right to so provide.

"In *Reuter* v. *Board of Supervisors,* 220 Cal. 314, 326 [30 Pac. (2d) 417], the court in dealing with another question arising out of the provisions of this same charter, said: 'The general purpose of section 7½ of article XI of the Constitution was to give local self-government or county home rule to counties of the state by means of charters framed under said constitutional amendment. That this was the intent and purpose of the section clearly appears from the language of the section itself, which declares that, after the charter has been approved by the legislature "such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter." ' "