Kunkle, J.
This action was brought by the state of Ohio, on relation of the prosecuting attorney of Champaign county, Ohio, against M. R. Talbott, a former clerk of the courts of Champaign county, Ohio, to recover the sum of $9.50, being one-half of the fees, for the naturalization of aliens, received by such clerk from time to time during his incumbency as such clerk for the period of three years commencing on the first Monday of August, 1906.
The federal act passed June 29, 1906, conferred upon the clerks of state courts the power to file, *263 issue and record naturalization papers, and prescribed in detail the fees which should be charged therefor.
The federal act in question further provided that one-half of such fees, to the extent of $3,000 in any one year, might be retained by such clerks, and that the balance of such fees should be remitted to the federal authorities. (34 Stats, at Large, 600; 2 U. S. Comp. Stats., 1913, Section 4372.)
Plaintiff in error duly accounted and paid to the bureau of immigration and naturalization one-half of the fees so received.
This controversy relates to the one-half of such fees, amounting to $9.50, retained by Talbott as clerk, under the federal act.
■Defendant in error claims that the amount so retained by Talbott should be paid into the county treasury of Champaign county, under the provisions of Section 2977 et seq., General Code.
Plaintiff in error claims that under the provisions of the federal act in question, as well as under the provisions of the county salary act, he is entitled to retain the sum as his own.
Plaintiff in error in justification of his action and in support of his contention cites an opinion of the attorney general of this state, of date January 11, 1907, to the effect that:
“The clerk of the court of common pleas may retain as his own earnings fees allowed him under the naturalization laws of the United States.”
The questions so presented are raised by a demurrer to the petition.
The trial court overruled a general demurrer to the petition and rendered judgment against defend *264 ant. Error is prosecuted to this court from such judgment.
It is claimed by plaintiff in error, defendant below, that the provision of the federal act, to the effect that a certain portion of such fees may be retained by the clerk, is exclusive, and that the county salary act has therefore no application to such fees. ■
This view has been taken by the supreme courts of various states: the supreme court of New Jersey in the case of Freeholders of Passaic v. Slater, 84 N. J. Law, 589; the supreme court of Oregon in the case of Fields v. Multnomah County, 64 Ore., 117; the supreme court of Massachusetts in the case of Inhabitants of Hampden County v. Morris, 207 Mass., page 167; and in other cases cited by counsel.
The court of appeals of California in the case of City and County of San Francisco v. Mulcrevy et al., 15 Cal. App., 11, 113 Pac. Rep., 339, held that the clerks of courts were required to account under the salary laws of that state for the amount retained by them from naturalization fees under the federal act in question.
This case was taken to the supreme court of the United States from California, and is reported in 231 U. S. Reports, page 669. Justice McKenna in delivering the opinion of the supreme court in the above-mentioned case, among other things, says, at page 674:
“The act is entirely satisfied without putting the officers of a State in antagonism to the laws of the State — the laws which give them their official status. It is easily construed and its purpose en *265 tirely accomplished by requiring an accounting of one-half of the fees to the United States, leaving the other half to whatever disposition may be provided by the state law.”
This decision by the highest federal authority settles the question that the liability of the clerk, as to the one-half of the fees received in naturalization cases and retained under the federal act in question, is controlled by the state law upon that subject. '
Counsel for plaintiff in error contend that under Section 2977, General Code', the clerk is required to account only for fees, etc., collected or received by law, meaning such laws as are enacted by the legislature of the state.
In support of such contention counsel cite the case of Freeholders v. Slater, supra, in which a similarly-worded statute was under construction by the supreme court of New Jersey.
Section 2977, General Code, reads as follows:
“Sec. 2977. All the fees, costs, percentages, penalties, allowances and other perquisites collected or received by law as compensation for services by a county auditor, county treasurer, probate judge, sheriff, clerk of courts, or recorder, shall be so received and collected for the sole use of the treasury of the county in which they are elected and shall be held as public moneys belonging to such county and accounted for and paid over as such as hereinafter provided.”
Counsel for defendant in error claims that Section 2977, General Code, should be read in connection with Section 2996, General Code, which latter section reads:
*266 “Sec. 2996. Such salaries shall be instead of all fees, costs, penalties, percentages, allowances and all other perquisites of whatever kind which any of such officials may collect and receive, provided that in no case shall the annual salary paid to any such officer exceed six thousand dollars.”
Counsel for defendant in error insists that when Section 2977, General Code, is so read in connection with Section 2996 it includes fees received from all sources, and therefore .falls within the California case and other cases cited.
In this connection we call attention to the recent decision of our supreme court in the case of The State, ex rel. Enos, Pros. Atty., v. Stone et al., 92 Ohio St., 63. In this case our supreme court has construed the county salary law broadly in order to effectuate the purposes of the act.
The same position was taken by our supreme court in the case of The State, ex rel. Lyne, v. Kennedy et al., 90 Ohio St., 75.
It must be remembered that in the case at bar the fees in question were received between August, 1906, and August, 1909. The question of liability, therefore, depends upon the provisions of the salary act of March 22, 1906, and not upon the provisions of the General Code as adopted in 1910.
Sections 1 and 18 of the original county salary act (98 O. L., 89) read as follows:
“Section 1. All the fees, costs, percentages, penalties, allowances and all other perquisites of whatever kind which by law may now be collected or received as compensation for services by any county auditor, county treasurer, probate judge, sheriff, clerk of courts or recorder, shall be received *267 and collected by all of said officers and each of them for the sole use of the treasury of the county in which they are elected and shall be held as public moneys belonging to said county and accounted for and paid over as such in the manner hereinafter provided.”
“Section 18. And said salaries shall be in lieu of all fees, costs, penalties, percentages, allowances and all other perquisites of whatever kind which any of the officials herein named may now collect and receive, provided, however, that in no case shall such annual salary payable to any of the officers aforesaid exceed the sum of $6,000.00.”
The above-mentioned sections were included in and superseded by Sections 2977 and 2996 of the General Code, adopted February 14, 1910.
When the General Code was adopted in 1910 the word “now” was omitted from Section 2977 and also from Section 2996.
The case of State, ex rel. Locher, v. Horner, 16 N. P., N. S., 449, arose since the adoption of the General Code.
That case holds that the clerk is required to account for the portion of the fees from naturalization retained under the federal act. The case, in so far as we are advised, has not been taken to a higher court, and the decision has been accepted by counsel and the parties thereto as containing a correct construction of the present sections of the code.
That case is largely relied upon by counsel for defendant in error, and while we express no definite opinion thereon, yet after a careful consideration of that decision and the authorities therein cited, we are inclined to the view that the case was *268 correctly decided under the present provisions of the General Code.
It appears from the statement of the case, however, that Horner’s term of office did not commence until the first Monday in August, 1911 — more than a year after the present provisions of the General Code took effect.
Where.a substantial change is made in the revision of statutes it amounts to an amendment thereof. See State v. Toney, 81 Ohio St., 130.
What effect, therefore, has the word “now” in Sections 1 and 18 of the county salary , act of 1906?
We cannot escape the conclusion that the word “now” must be given some meaning.
It is a word which is not ordinarily found in statutes of this character.
It is a word not found in the California law or in the statutes involved in any of the other cases cited.
Why was the word “now” used in both of these sections ?
It must be presumed that the legislature used that word advisedly and with some object in view. It was undoubtedly used to exclude sources of revenue not then in existence.
“The term now signifies time present.”
“The word now, in its ordinary acceptation, means at this time, or at the present moment, or at a time contemporaneous with something done. It relates to the actual existence of the fact at the time and place mentioned.”
For further definitions of the word now, as used in statutes and elsewhere, see 5 Words and Phrases, 4851.
*269 We are unable to reach any conclusion except that by the use of the word now in Sections 1 and 18 of the act in question the legislature intended to exclude from the provisions of the county salary law new and independent sources of official revenue such as naturalization fees under the federal act in question, which federal act was not in existence when the county salary act of 1906 was adopted.
The case of The State, ex rel. Lyne, v. Kennedy et al., supra, involved a contract for indexing, made by the county auditor with the county commissioners, but the authority therefor existed under statutes in force at the time the county salary law was enacted. There was no new source of revenue.
The case of The State, ex rel. Enos, Pros. Atty., v. Stone et al., supra, involved a question of construction between apparently conflicting provisions of the General Code, and the general policy of the county salary law was allowed to outweigh or overbalance the conflicting provision which apparently revived the fee system.
The general policy, the spirit and the reason of an act may properly be applied to reconcile conflicting or doubtful provisions of an act, but cannot be permitted to override the effect of words of clear import.
Construing the county salary law of 1906 as adopted, we think plaintiff in error, under the averments of the petition, was not required to turn such fees into the county treasury.
There is no averment in the petition that the work involved in the naturalization fees in question was performed by deputies provided and paid *270 by the county, and we express no opinion as to the effect of such an averment.
It therefore follows that the judgment of the court of common pleas should be reversed and the cause remanded with instructions to overrule the demurrer, and for such further proceedings as may be provided by law.

Judgment reversed and cause remanded.

Ferneding and Allread, JJ., concur.